## LUTHER HILL V. THE STATE.

No. 21991. Delivered March 11, 1942.
Rehearing Denied April 22, 1942.

The opinion states the case.

*Fred Whitaker,* of Carthage, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of the murder of his wife, Nellie Mae Hill, by throwing her down and pouring gasoline upon her and setting her afire. The penalty assessed is death.

This is the second appeal and the second time that the death penalty has been assessed by a jury of Panola County, the opinion of the former appeal appearing in Vol. 141 Tex. Crim. Rep. 169, 149 S. W. (2d) 93.

Appellant presents two bills of exception, the first of which complains of leading questions asked by the district attorney of the witness Viola Lewis, who testified to statements made by the deceased in contemplation of death in which the details of the tragedy were given. The questions were objected to on the ground that they were leading and not because of the facts detailed. They were questions designed to qualify the evidence which the witness was giving under the rule. The bill presents testimony in question and answer form and it would not be considered except for the fact that the death penalty was assessed. It is there recited that the district attorney asked the witness the following:

"After she received that burn and while she was conscious and after she had told you she would not get well and without asking her any question or trying to get her to make a statement any particular way or another * * * * did she after those things happened at any time, make you a statement?"

The court approved the bill with the following qualification:

"The Court does not certify that the questions and answers were prejudicial or harmful in any way. All of the testimony pertaining to this issue is not quoted in the Bill. The Court refers to the Statement of facts for a full statement as to the

predicate laid by the District Attorney and the testimony in full on this point, which will show that a proper predicate was laid for the admission of this testimony. If any of the questions were leading, they were not leading by the District Attorney to the extent that they put the answers in the witness' mouth, and the answers of the witness were Her own and voluntarily given."

Inasmuch as the qualification refers to the statement of facts we are at liberty to examine it for the purpose of considering the qualifications. It appears to us that the question complained of was a summary of the things which had been previously brought out, probably for the purpose of making it more clear. If such is the case, the objection to the questions on the ground that they are leading, must fall. If that is not true, the narrative statement of facts should have been so changed before being approved as to indicate clearly that it was not. Furthermore, it appears that other witnesses who properly detailed the condition of the deceased to make her statements admissible recited her conversations to practically the same things as that given by this witness. For this reason we would not be inclined to sustain the complaint. In no event do we think the questions complained of would be sufficiently harmful to work a reversal of the case. Asking harmless leading questions is not commended; yet, we note that the courts seldom reverse a case because questions are leading. Martin v. State, 294 S. W. 580; Washington v. State, 21 S. W. (2d) 524.

The second bill of exception complains of the action of the court in admitting in evidence that portion of the record on the former trial which embraced the voluntary confession introduced in evidence at that time. It appears that since the first trial of the case the original statement has become lost and the copy thereof prepared by the court reporter was admitted in evidence. Complaint is made in the brief and argument that the proper predicate was not laid to authorize the admission of the copy. The bill reflects that the district attorney testified to the circumstances under which the original statement was given and under which it was introduced in evidence on the first trial. He further says, "I have made a diligent search to try and find the original statement of which this is an exact copy and I have been unable to find it." Objection was made, "For the reason that the original itself would be the better evidence." A further ground of objection was that at the time the statement was given Nellie Mae Hill was not dead and

that any warning which might have been given to Luther Hill could not have been a warning relative to the offense for which he is now on trial. It, therefore, appears that the objection alleged was not against the failure of the State to lay a proper predicate, but on the broader ground that the original would be the best evidence. This is quite true, but when the original cannot be found and a proper predicate is laid a proven copy may be admitted. There being no objection to the predicate that was made, the bill cannot be sustained.

While the record contains no bill of exception on the subject, appellant in his brief contends that the record fails to reflect that Nellie Mae Hill died as a result of the wounds inflicted by appellant. It is indicated in the record by questions asked that Dr. Thomas Fleming McKeller attended her during the eighty-four days she lived after the burns were inflicted upon her and that he was at the time of the trial "in the service," probably meaning in the Army. Dr. C. D. Baker, who visited her on one occasion, was called to testify and while he could not give the date he said, "I heard of her receiving a burn. After that I had occasion to examine that woman. I found the bigger portion of her body covered by a suppuration or an infected wound; more than half of the body being in a raw, suppurated, infected condition. * * * I saw no reason in the world for the woman not to die. I didn't see a chance for her to get well. I talked with her. She was conscious. Her face and head was just a raw, infected condition; the skin was all gone, puss. The whole face and part of the skull * * * was covered by puss as a result of this condition—the hair was practically all gone * * *."

Viola Lewis, mother of the deceased, testified, among other things, "Her whole body was burned from her waist on up and her back and arms and head and face; one ear was burned off and one of her breasts was burned up. * * * She lived from the 11th of January to the 6th of April. * * *" She says further that Dr. McKellar attended her nearly every day.

Other witnesses testified as to a horrible condition in which the woman suffered, to statements she made about it, all of which amply sustains the jury in their finding that she died as a result of the wounds which the testimony shows were voluntarily inflicted by appellant.

The crime as detailed in the evidence of this case is one of the most heartless possible to picture. She was working with a white family as their cook and, by scheming and planning, appellant induced her to come to his home where he had prepared to accomplish his fiendish purpose. He enticed her into a room and then ordered her out. As she turned to leave he struck her on the back of the head, knocked her down, took a rope out of his pocket and tied her hands behind her. He then saturated her hair with gasoline, rubbing it in to her scalp and, after a third attempt, succeeded in setting it afire. As the fire spread over her body he stood over her and poured on more of the fluid. When he thought his purpose was accomplished he ran to a neighbor and asked for help, reporting that she attempted to light a stove and that it exploded. The record is silent as to a motive for the commission of the crime. None is necessary and nothing conceivable would justify the act. Two juries have heard the evidence and each have inflicted the death penalty. It is not ours to say under the facts of this case that the crime was not proven and that the verdict of death under our law is not justified by the facts.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing appellant re-asserts the two legal propositions urged on the original submission of this case for a reversal thereof. The first is that the State failed to prove that the deceased died as the result of the injury inflicted upon her by appellant. Dr. Baker testified that he visited the deceased after she had been burned and examined her. He described the extent of the burned part of her body and her condition and then stated that he did not see a chance for her to get well. What does his language mean? It conveys to the mind of a person of average intelligence the idea that her injury was such that in his opinion she could not recover. That she did not recover is indisputably shown. Consequently the injury inflicted upon her was the cause of her death. Appellant cites us to the case of Buford v. State, 17 S. W. (2d) 1072, as sustaining his contention. However, that case is readily distinguishable from the instant case on the facts. In that case appellant's wife was the only person who testified to any wounds on the back of her husband. She merely looked at his back and made

no examination of or probe of the wounds; nor was there any description of the instrument with which the wounds were inflicted.

Appellant's second contention is that we erred in holding that a sufficient predicate was laid for the introduction of a copy of his voluntary confession. This question was also considered and discussed in the original opinion and we think it was properly disposed of. Hence we see no good reason for any further discussion thereof.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.