## JAMES BELL V. STATE.

No. 29,587.   March 5, 1958.
Appellant's Motion for Rehearing Overruled
May 7, 1958.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) June 11, 1958.

*Herman E. Hudson,* Austin, for appellant.

*Henry Wade,* Criminal District Attorney, *Homer G. Montgomery, Lem Brotherton, A. D. Jim Bowie,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, death.

The witness Jerry Jackson testified that appellant and a woman companion had been in his tavern on the night in question, that shortly after they left he followed and a short distance away came upon them talking in the street, that the appellant

had a pistol in his hand, that he approached them and that the following conversation took place.

Witness:  "Bell, I want to speak to you a minute.

Appellant:  "Boss man, I don't want you to interfere with me and my woman's business.

Witness:  "I don't mean to interfere with you and your woman's business. I just want to speak to you.

Appellant:  "Yeah, I know what you want to say. You want to tell me to go and put the gun up because somebody is going to have me arrested.

Witness:  "Well, that's what I wanted to say to you.

Appellant:  "I still say I don't want you to interfere with me and my woman's business.

Witness:  "I am sorry."

Jackson further testified that he started back to his tavern and had gone approximately 50 feet when he heard a gun fire three or four times, about faced and saw the appellant's woman companion lying on the pavement and the appellant walking away, and when he returned to the scene saw no purse or weapons of any kind. Shortly thereafter, he signaled to a police car which was passing, and the officers took charge of the body.

Ella Jackson testified that she arrived upon the scene shortly after the police officers arrived, examined the woman who was lying on the pavement observed multiple bullet wounds in her body, saw no purse or weapons, and observed one fifty-cent piece in the woman's hand.

Edward Phillips testified that he had observed the appellant at Jackson's tavern on the night in question and later, on his way home, saw the appellant talking to a woman companion in the street; that he passed them and had gone approximately a block when he heard three or four shots, returned to the scene, saw the woman lying on the pavement, but the appellant was no longer there. He stated that he saw no purse or weapon near the body of the woman.

It was established that the deceased died of gunshot wounds.

The appellant surrendered to the officers later that night and turned over to them a revolver which contained only spent shells.

The next afternoon the appellant signed a confession, which was introduced in evidence, without objection, and from which we quote:

"Last night around midnight, June 14 or 15, 1957, me and Jerline Jackson had been to a beer joint on Macon Street and when we left to go across the street to my place of business on Bexar Street, I was walking in front of Jerline. When I got close to my place of business at Macon and Bexar Streets Jerline told me not to go and I said I had to see about my business and Jerline said you will wait and started to open her purse and I shot her five times. The gun that I gave the officers when they arrested me is the same gun that I shot Jerline with. Jerline had been arguing with me and trying to cause trouble between me and my old lady."

Appellant, testifying in his own behalf, stated that he had met Jerline two or three months prior to the homicide and had an act of intercourse with her for pay, that the deceased thereafter came to the tavern which he and his common law wife operated and asked him for free beer, which he gave her. He stated that on the night in question, fearful that his attentions to Jerline would be observed by his common law wife, he told her that he would meet her outside, that he did so and they went to Jackson's for a drink, and that when he left to go back to his own establishment she called to him to wait; and we quote from his testimony:

"A. * * * Well I had a pistol in my right pocket here, and I taken it out of my pocket, and when I went to turn around towards her I mean I shot her.

"Q. Why did you shoot her? A. Well, truthfully speaking I really don't know why I shot her, like I say I was drinking and I really did pull the pistol out. I did not have no intention of shooting but to turn around and I wheeled around towards her, the pistol went off and all I can remember is just I continued to shoot it.

"Q. How many times did you shoot it? A. Well, to my knowledge I know it must have been all five of them."

He did not mention the deceased opening her purse in his

testimony. He admitted that he had plead guilty to three burglary cases and, after having served such sentences, that he was convicted of murder with malice in 1953.

We find the evidence sufficient to support the conviction and shall discuss the contentions advanced by appellant's earnest court-appointed counsel.

He first contends that the court erred in permitting the state to ask leading questions. With full candor, he admits that he can cite no recent decision of this court in support of his contention, but does rely on Ripley v. State, 51 Texas Cr. Rep. 126, 100 S.W. 943, and Goodsoe v. State, 52 Texas Cr. Rep. 626, 108 S.W. 388.

Rippey was reversed for several reasons, and at the end of the opinion the court, without discussing them, stated that the bills of exception relating to the asking of leading questions were well taken and should not occur upon another trial.

Such is true of Goodsoe except that in that case the leading question is set forth in the opinion, and the court pointed out that it embraced the very crux of the state's case which the court termed weak.

The most important distinction between the case at bar and the cases cited is that, here, the appellant testified to all the material facts and made out as strong a case as had the witnesses to whom the alleged leading questions were propounded. We have examined each of the questions complained about and find that the court sustained the objection to a number of them and required the state to rephrase the question, and we do not find an abuse of discretion in his rulings on the other questions. Recently in Deams v. State, 159 Texas Cr. Rep. 496, 265 S.W. 2d 96, we quoted from Hill v. State, 144 Texas Cr. Rep. 57, 161 S.W. 2d 80, as follows: "Asking harmless leading questions is not commended, yet, we note that the courts seldom reverse a case because questions are leading."

We now move to appellant's next contention which related to an alleged variance between the name attributed to the deceased by some of the state's witnesses and the name alleged in the indictment. The indictment names the deceased as "Jerline Jackson." The witness Jerry Jackson testified that he did not know the deceased's correct name, as "some called her Jackson and come called her Scott." His wife was asked, "This woman's

name was Geraldine Scott?" and answered, "Well, that's to my way of knowing it was."

Article 401, V.A.C.C.P., provides, in part, as follows: "When a person is known by two or more names, it shall be sufficient to state (in the indictment) either name."

In the case at bar, the appellant's confession refers to the deceased as "Jerline Jackson," and in his testimony he so named her.

The deceased's father Samuel Scott testified that she had been married at one time to a man named Jackson, to whom she bore a child, and that following her divorce she retained the name Jackson.

The cases cited by the appellant grew out of situations where there was no proof of the name of the injured party (Brown v. State, 53 Texas Cr. Rep. 303, 109 S.W. 188) or where there was no proof that accused was known or called by the name charged in the indictment or that such was his name (Luttrell v. State, 65 Texas Cr. Rep. 102, 143 S.W. 628), and are not controlling here.

Appellant's last contention is that the trial court erred in not granting his motion for new trial because the verdict of the jury was contrary to the law and the evidence in that it is excessive.

It has been the consistent holding of this court that, if the punishment is within that prescribed by the statute, it is beyond the province of this court to pass on the question as to whether the evidence is sufficient to support a punishment greater than the minimum. Pineda v. State, 157 Texas Cr. Rep. 609, 252 S.W. 2d 177, and Manning v. State, 162 Texas Cr. Rep. 329, 284 S.W. 2d 903.

Appellant's counsel is to be commended for his zeal in behalf of the accused.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Judge.

Appellant for the first time contends that the state failed to prove venue.

This court is without authority to reverse a conviction for the offense here charged because of the absence of the proof of venue, unless the record reflects that the accused upon the trial of the case challenged the sufficiency of the evidence to show venue. Venue was not made an issue during the trial of the instant case. Therefore, the contention cannot be sustained. Art. 847, Vernon's A.C.C.P.; Masters v. State, 165 Texas Cr. Rep. 303, 306 S.W. 2d 355, and cases there cited. It is observed that the testimony shows the killing took place in the city of Dallas. This court will take judicial knowledge that said city is in Dallas County. 1 Branch 2d Ed., p. 327, Sec. 284; Clark v. State, 39 S.W. 943; Lamkin v. State, 136 Texas Cr. Rep. 99, 123 S.W. 2d. 662; Barragan v. State, 141 Texas Cr. Rep. 12, 147 S.W. 2d 254; Walton v. State, 152 Texas Cr. Rep. 498, 170 S.W. 2d 224; McClure v. State, 163 Texas Cr. Rep. 607, 294 S.W. 2d 838.

We have again reviewed the record and remain convinced that the evidence is sufficient to support the jury's verdict.

The record reflects that qualified and competent counsel was appointed to represent the appellant and that he discharged his duties and responsibilities.

The motion for rehearing is overruled.

Opinion approved by the Court.