Daniel GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 890–85.

Court of Criminal Appeals of Texas, En Banc.

Jan. 28, 1987.

period of ten years. Subsequently appellant's probation was revoked, and a five year sentence was imposed.

Finding a fundamental defect in the indictment, the court of appeals reversed appellant's conviction and dismissed the prosecution. *Gonzales v. State*, 695 S.W.2d 81 (Tex.App.—San Antonio 1985). We granted the State's Petition for discretionary review in order to examine the State's contention that the court of appeals erred in holding the indictment fundamentally defective.

### I.

It is an offense under Sec. 28.02(a)(1), supra, to "start[] a fire or cause[] an explosion with intent to destroy or damage any building, habitation or vehicle ... knowing that it is within the limits of an *incorporated* city or town[.]"[1] The indictment in this cause alleged that:

> "on or about the 9th day of JUNE, A.D., 1982, DANIEL GONZALES did ... INTENTIONALLY START A FIRE with intent to destroy and damage a HABITATION GENERALLY LOCATED IN THE 4000 BLOCK OF CENTRALIA STREET, KNOWING THAT IT WAS WITHIN *THE CITY OF SAN ANTONIO;* against the peace and dignity of the State."

Appellant's counsel on appeal filed an *Anders*[2] brief, in which he suggested the only arguable contention on appeal was that the indictment was fundamentally defective.[3] He did not specify in what manner the indictment was lacking, but in fact averred that it conformed to all the requirements of an arson indictment under this Court's opinion in *Huggins v. State*, 544 S.W.2d 147 (Tex.Cr.App.1976).[4] Commendably, it

E.B. Barretto, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., Beth Taylor and Charles Estee, Asst. Dist. Attys. San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of arson under V.T.C.A. Penal Code, Sec. 28.-02(a)(1), and his punishment assessed at five years. Sentence was suspended and appellant was placed on probation for a

---

1. All emphasis is supplied throughout unless otherwise indicated.

2. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

3. Ordinarily following a revocation of probation an accused is entitled to appeal only alleged errors adhering in the revocation proceedings. Art. 42.12, Sec. 8(b), V.A.C.C.P. Relying on this

Court's opinion in *Morgan v. State*, 571 S.W.2d 333 (Tex.Cr.App.1978), however, the court of appeals allowed this collateral attack upon the original conviction.

4. In fact, *Huggins v. State*, supra, involved sufficiency of an indictment to charge *attempted* arson under the provisions of Art. 1316, V.A.P.C. (1925), *not* the current offense of *arson* under Sec. 28.02(a)(1), supra.

was the State, in its reply brief on appeal, that first noted the potential problem with the instant indictment, *viz:* that it failed to allege that San Antonio is an *incorporated* city. However, the State argued, because the fact that San Antonio is an incorporated city is "a matter[] of which judicial notice is taken[,]" it "need not be stated in an indictment." Art. 21.18., V.A.C.C.P.[5] The court of appeals ruled that it could not take judicial notice of the incorporation of San Antonio in light of this Court's decision in *Vasquez v. State,* 665 S.W.2d 484 (Tex. Cr.App.1984), and thus, Art. 21.18, supra, could not serve to obviate the missing allegation. Finding the fact of incorporation to be an essential element of the offense of arson as defined in Sec. 28.02(a)(1), the court of appeals held its omission to be fatal to the indictment, and ordered the prosecution dismissed.

In its opinion on direct appeal in *Vasquez v. State,* 653 S.W.2d 492 (Tex.App.—Corpus Christi 1983), the court of appeals had taken judicial notice that Three Rivers is an incorporated city. In doing so, the court analogized to *Bell v. State,* 166 Tex.Cr.R. 340, 313 S.W.2d 606 (1958) and *Payne v. State,* 596 S.W.2d 911 (Tex.Cr.App.1980), in which this Court took judicial notice that Dallas and Houston were located in Dallas and Harris counties, respectively. Thus, the court of appeals found that failure to prove at trial that Three Rivers was an incorporated city was not fatal to the defendant's conviction for arson. On petition for discretionary review this Court found that the court of appeals had misapplied the holdings of *Bell* and *Payne,* both supra.[6] And then, *sans* authority, it held that the court of appeals "should not have taken judicial notice that Three Rivers is an incorporated city or town." 665 S.W.2d at 486.

The State now argues that, to the extent it holds that courts cannot judicially notice a particular city is incorporated, *Vasquez,* supra, should be overruled.

## II.

Historically, municipalities in Texas have become incorporated in one of three ways.[7] From 1845 a city or town was incorporated only by way of a special charter granted by the Legislature. Where a city was granted such a charter, and the special act of the Legislature contained a provision expressly requiring that judicial notice be taken of its terms, or specified that the charter should have the force and effect of a public act, judicial notice of the charter and its terms was required. 35 Tex.Jur.3d Evidence Sec. 49, at 86–87; 39 Tex.Jur.2d Municipal Corporations Sec. 48, at 437; 17 Tex.Jur. Evidence Sec. 13, at 179–80.

In 1858 the Legislature promulgated the first general law pertaining to the incorporation of cities and towns. See Acts 1858, 7th Leg., p. 69, ch. 61; 4 Gammel's Laws of Texas (Gammel's) 941 (1898). Since then that initial scheme has gone through a great deal of evolution. See now V.A.C.S. Art. 961 et seq. and Art. 1133, et seq. See also, Interpretive Commentary following Tex. Const., Art. XI, Sec. 5. In *Temple v. The State,* 15 Tex.App. 304 (1883), the Court of Appeals held that courts could not take judicial notice of incorporation of a town or city that had incorporated through "the general laws upon the subject." The Court explained:

"And the reason for the rule as it obtains with us may be found in provisions of our law with regard to municipal corporations and the mode and manner

---

5. Art. 21.18, supra, reads in whole:
   "Presumptions of law and matters of which judicial notice is taken (among which are included the authority and duties of all officers elected or appointed under the General Laws of this State) need not be stated in an indictment."

6. A careful reading of *Payne v. State,* supra, reveals that it relied on *Bell,* supra, in holding that the Houston police officer who had been

assaulted was in fact a "peace officer," as defined in V.T.C.A. Penal Code, Sec. 1.07(a)(25) and Art. 2.12(3), V.A.C.C.P., because the Court could take judicial notice that Houston is a city in Harris County; *ergo,* he was a "police officer of an *incorporated city, town, or village."*

7. See generally, T. O'Quinn, *Title 28: Cities, Towns and Villages: History, Status, and Function,* 2A V.A.C.S. XXI–XXVI.

of their creation. *No special legislative act is required to create or legalize such corporations.* Any town of two hundred inhabitants or any city may of itself become incorporated by complying with the general laws upon the subject. (Rev. Stats., Arts. 340 to 541 inclusive; Acts 17 Legislature, pp. 63, 115, 116, 117.) After an election has been held under the general laws, and 'corporation' is carried, all that is necessary to invest the town with all the rights incident to corporations under the law is that the county judge 'shall, within twenty days after the receipt of the returns, make an entry upon the records of the Commissioners' Court that the inhabitants of the town are incorporated,' etc. (Rev.Stats, Arts. 511 to 514 [See now Arts. 1136 to 1139, supra].) *It could scarcely be expected that the courts should judicially know of all such and when they have been made and placed on the records of the County Commissioners' Court."*

*Id.,* at 313–14. See also *Patterson v. The State,* 12 Tex.App. 222 (1882); *Bluitt v. State,* 56 Tex.Cr.R. 525, 121 S.W. 168 (1909). Presumably this holding did not apply to judicial notice of those cities and towns incorporated via special charter, since in *City of Houston v. Dooley,* 40 Tex.Civ.App. 371, 89 S.W. 777 (Houston [1st] 1905), "judicial cognizance" was taken not only of the then current special charter of the city of Houston, but also of earlier, superseded charters of that city, as well as of the fact that Houston had "been an incorporated city for more than 40 years[.]" *Id.,* 89 S.W. at 778. See also, *Pence v. State,* 110 Tex.Cr.R. 378, 9 S.W.2d 348 (1928).

The Home Rule Amendment to Art. XI, Sec. 5 of the Texas Constitution came in 1912, followed by enabling legislation in 1913. Acts 1913, 33rd Leg., p. 307, ch. 147. Now, "cities with populations over 5,000 might draw their own charters and include anything they wished not inconsistent with the general laws or the constitution." Interpretive Commentary, Tex. Const. Art. XI, Sec. 5, at 642. As part of the 1913 enabling act the Legislature promulgated

what in essence may now be found at V.A. C.S., Arts. 1173 and 1174, which provisions read:

"Art. 1173.   Certification

Upon adoption of any such charter or amendment to any existing charter as provided herein, the mayor or chief executive officer exercising like or similar powers, of any such city, as soon as practicable, after the adoption of any such charter or amendment, shall certify to the Secretary of State an authenticated copy under the seal of the city, showing the approval by the qualified voters of any such charter or amendment, and the Secretary of State shall thereupon file and record the same in a separate book to be kept in his office for this purpose.

Art. 1174.   Registration

The city secretary of any such city or officer exercising like or similar powers, upon adoption and approval of any such charter or amendment thereof by the qualified voters as herein provided, shall record at length upon the records of the city, in a separate book to be kept in his office for such a purpose, any such charter, or amendment so adopted. *When such charter or any amendment thereof shall be so recorded, it shall be deemed a public act and all courts shall take judicial notice of same and no proof shall be required of same....*"

· Early on at least one of the courts of civil appeals interpreted these provisions to establish an evidentiary predicate to the taking of judicial notice of the *content* of a Home Rule charter. Thus, in *Pate v. Whitley,* 196 S.W. 581, at 582 (Tex.Civ.App.—El Paso 1917, no writ), the court opined:

"As we construe this section, it means that the courts shall take judicial notice of the charter when it has been recorded as stated, and that no proof is necessary of the terms and provisions of the charter. *We do not construe the statute as imposing judicial notice of the fact that the charter has been certified to the Secretary of State and that it has been by that officer filed and recorded and*

*also recorded by the city secretary or other officer of the city exercising the powers of the city secretary.* The Legislature surely did not intend that courts shall be charged with notice of facts of which they could not have knowledge without some evidence. We think it is a prerequisite to the taking of the judicial notice imposed by the act that the charter shall have been certified to the Secretary of State and shall have been recorded by that officer and shall also have been recorded by the city secretary or other officer exercising like or similar powers, and that *there must be some evidence of the fact that the charter has been so certified and recorded.* There is no evidence in this record that the charter of Mineral Wells has been certified to the Secretary of State and by that officer recorded, nor is there any evidence that such charter has been recorded by the secretary of the city of Mineral Wells or other officer thereof exercising like or similar powers. So this court has no knowledge, actual or constructive, of the terms and provisions of the charter of Mineral Wells."

The court went on to observe that, even when this predicate has been met, "it seems imperative, or, at least, highly advisable, that a copy of any such charter be offered in evidence in any case which involves a consideration of its various terms and provisions." *Id.,* at 583.

In later decisions the courts of civil appeals did not let the holding of *Pate v. Whitley,* supra, prevent the appellate courts *themselves* from taking judicial notice of incorporation of a city. E.g., *Bowers v. International-Great Northern R. Co.,* 286 S.W. 590, at 592 (Tex.Civ.App.—Austin 1926), rev'd on other grounds, 16 S.W.2d 520 (Tex.Comm'n.App.1929, holding approved); *Thomason v. Pacific Mut. Life Ins. Co. of California,* 74 S.W.2d 162, at 164 (Tex.Civ.App.—El Paso 1934, writ ref'd).

More recent decisions of the courts of civil appeals have reiterated the rule of

*Pate v. Whitley,* supra, without, however, expressly alluding to that case. *See Hayden v. City of Houston,* 305 S.W.2d 798 (Tex.Civ.App.—Ft. Worth 1957, writ ref'd n.r.e.); *Kirkman v. City of Amarillo,* 508 S.W.2d 933 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *Bryce v. Corpus Christi Area Convention and Tourist Bureau,* 569 S.W.2d 496 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). But see, *Cone v. City of Lubbock,* 431 S.W.2d 639 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.).

■ Unlike the courts of civil appeals, this Court has never heretofore recognized the evidentiary predicate to judicial knowledge of the fact of incorporation of a Home Rule city. In a number of cases, typically involving prosecution for driving while intoxicated upon a public road of some incorporated city, in the face of a ground of error asserting insufficient evidence to establish incorporation as alleged in the indictment, this Court has itself taken judicial notice of the incorporation of various Home Rule cities, including San Antonio, and thus upheld convictions. *Blackman v. State,* 20 S.W.2d 783 (Tex.Cr.App.1929); *Fuller v. State,* 116 Tex.Cr.R. 310, 32 S.W.2d 358 (1930); *Farmer v. State,* 119 Tex.Cr.R. 212, 43 S.W.2d 588 (1931); *Snyder v. State,* 132 Tex.Cr.R. 73, 102 S.W.2d 424 (1936). Indeed, in *Salazar v. State,* 161 Tex.Cr.R. 98, 275 S.W.2d 112, at 113 (1955), the Court went so far as to say:

"The charter of the city of El Paso is on file in the office of the Secretary of State of this state. This court takes judicial knowledge of *that fact* and therefore that it is an incorporated city. [*Fuller,* and *Farmer,* both supra, which had relied on Art. 1174, supra, are here cited.]"

It would thus appear that courts of appeals may indeed take judicial notice of incorporation, at least in the case of those towns or cities which have been incorporated by special act of the Legislature,[8] or

---

8. By about 1920 the courts began to hold that

the Home Rule amendment to the constitution

under Art. XI, Sec. 5. To the extent that it may be read to hold otherwise,[9] and without disturbing our ultimate resolution therein,[10] but with respect to specially chartered cities and towns and home rule cities *Vasquez,* supra, is disapproved.

### III.

█ It remains to be decided whether "judicial notice is taken" that the city of San Antonio is incorporated for purposes of Art. 21.18, supra. We hold that it is.

"The theory [of judicial notice] is that, where a fact is well known by all reasonably intelligent people in the community or *its existence is so easily determinable with certainty from sources considered reliable,* it would not be good sense to require formal proof."[11] 1 R. Ray, Texas Practice: Texas Law of Civil and Criminal Evidence, Sec. 151, at 193 (3d ed. 1980).

The special act of 1856 by which San Antonio was reincorporated[12] declares itself to be "a public act," which "shall be judicially taken notice of in all courts of this state." Act of July 17, 1856, ch. LXXXVII, 1856 Tex.Gen.Laws 4, 21; 4 Gammel's 550, 567 (1898). See also Act of Jan. 14, 1842, 1842 Tex.Gen.Laws 32; 2 Gammel's 704 (1898). Like provisions may be found in the special reincorporation acts of 1870 (Act of August 13, 1870, ch. CXXIII, 1870 Tex.Gen.Laws 244; 6 Gammel's 762 (1898)), and of 1903 (Ch. XXLIV, Texas Special Laws, 28th Leg., p. 322; 12 Gam-

mel's (1904)). As we have already acknowledged, special charters containing such provisions were required to be judicially noticed.

On file in the office of the Secretary of State are certain papers revealing the following: the first amendment to the charter of San Antonio pursuant to the Home Rule enabling legislation of 1913 was certified and filed in that office on July 28, 1914; in 1951 a whole new charter was adopted by the same authority, and similarly certified and filed; the certification for the 1951 charter verifies that it has been recorded at length in the office of the San Antonio city secretary. Thus, we know that all provisions of Arts. 1173 and 1174, supra, have been complied with, rendering judicial notice mandatory. And indeed, the San Antonio Court of Civil Appeals apparently twice judicially recognized the status of San Antonio as a Home Rule City. *City of Terrell Wells v. City of San Antonio,* 216 S.W.2d 657 (Tex.Civ.App.—San Antonio 1948, writ ref'd); *State v. City of San Antonio,* 259 S.W.2d 248 (Tex.Civ.App.—San Antonio 1953, writ ref'd n.r.e.). More recently, the San Antonio Court of Appeals has taken judicial notice of the city's charter, and hence of the fact it is a municipal corporation. City of San *Antonio v. Aguilar,* 670 S.W.2d 681 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

As we understand him, appellant argues that because there was no predicate laid in

---

"had divested the Legislature of [special charter] power and placed it in the cities to be exercised by a majority of the qualified voters. (*State v. Vincent,* Tex.Civ.App. 217 S.W. 402, affirmed Com.App. in 235 S.W. 1084)." T. O'Quinn, supra, at XXVI.

**9.** In all likelihood, though we have not now looked into the question, the city or town of Three Rivers, if incorporated, would be so by virtue of compliance with "the general laws upon the subject," see Arts. 966 and 1133, supra. If that is the case, then our conclusion in *Vasquez,* supra, would indeed be correct under the holding of *Temple v. The State,* supra. See *ante* at p. 748.

**10.** Having found the evidence sufficient on an alternatively alleged and charged theory of arson, we affirmed the judgment of the court of

appeals despite our holding it had erred in judicially noticing the incorporation of Three Rivers. 665 S.W.2d at 487.

**11.** Tex.Cr.R.Evid. Rule 201(b) reads:

"*Kind of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) *capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.*"

**12.** The Supreme Court noted in *Dittmar v. Dignowity,* 78 Tex. 22, 14 S.W. 268, 269 (1890) that San Antonio was established, apparently as a corporation, "by the government of Spain prior to the year 1733[.]" A special charter was granted by the Congress of the Republic as early as December 14, 1837.

the trial court showing that a Home Rule charter was filed for San Antonio with the city secretary and the Secretary of State, judicial notice of incorporation was not required under the provisions of Arts. 1173 and 1174, and for this reason Art. 21.18, supra, is inapplicable. He relies on those decisions of the courts of civil appeals alluded to earlier, *viz: Kirkman v. City of Amarillo,* supra; *Hayden v. City of Houston,* supra; and *Bryce v. Corpus Christi Area Convention and Tourist Bureau,* supra. We reject this argument for two reasons.

First, this Court has never recognized the requirement, first articulated in *Pate v. Whitley,* supra, of an evidentiary predicate to judicial notice of the charter of a Home Rule city. Nor are we convinced now of the soundness of such a requirement,[13] particularly where, as here, we are concerned only with the question of whether such a charter exists, and *not* with its particular *terms.* Second, and more importantly, we are not concerned here with sufficiency of the *probata,* but of the *allegata.* That a predicate for judicial notice is not laid in the trial court might give rise to a claim of trial error or insufficiency of evidence on appeal. However, for purposes of determining the adequacy of an indictment, we deem it sufficient that a fact is *susceptible* to establishment by judicial notice in the trial court, to obviate the need to allege that fact, under Art. 21.18, supra.

As we have shown, the incorporation of the city of San Antonio is certainly susceptible to judicial notice, under the terms of Art. 1174, supra. The omission of allegation of the fact of incorporation was therefore not fatal to the indictment, by operation of Art. 21.18, supra. See *Meredith v. State,* 79 Tex.Cr.R. 277, 184 S.W.

204 (1916); *Carrillo v. State,* 566 S.W.2d 902 (Tex.Cr.App.1978); *Legg v. State,* 594 S.W.2d 429 (Tex.Cr.App.1980); *Oliver v. State,* 692 S.W.2d 712 (Tex.Cr.App.1985) (Clinton, J., concurring).

The judgment of the court of appeals is reversed, and the judgment of the trial court, affirmed.

CLINTON, Judge

ONION, P.J., and TEAGUE, J., dissent.

WHITE, J., not participating.

---

**13.** Indeed, it runs counter to the whole theory of judicial notice that evidence should have to be presented as a prerequisite. Matters subject to judicial notice usually are not and do not have to be within the personal, firsthand knowledge of a judge. To demonstrate that a matter is easily ascertainable from a reliable source is not the same as satisfying an evidentiary predicate. Strictly speaking, rules for admitting evidence are not involved. See generally, R. Ray, supra, Sec. 152, at 194–97; see also Tex.R.Cr. Evid. Rule 201. In this day and age it is certainly easy enough to obtain from the office of the Secretary of State in Austin a certification as to whether a particular city has filed a Home Rule charter pursuant to Art. 1174, supra.