

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00320-CR

———————————————

RIYNALDO GRAY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1836099

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

## I. Introduction

Appellant Riynaldo Gray challenges his conviction for arson. Appellant was indicted for two counts of arson: Count One charged arson of a habitation, and Count Two charged arson of a vehicle. A jury convicted Appellant of both counts and also found the deadly weapon allegations to be true. On the first count, the jury assessed Appellant's punishment at fifty years' confinement in the Texas Department of Criminal Justice and a $10,000 fine. On the second count, the jury assessed Appellant's punishment at fifteen years' confinement in the Texas Department of Criminal Justice and a $5,000 fine. The trial court sentenced Appellant in accordance with the jury's verdicts.

The indictments[1] alleged that Appellant had committed the acts of arson with alternative allegations of "knowing [the property] was within the limits of an incorporated city or town[] *or* was located on property belonging to another." [Emphasis added.] In a single issue on appeal, Appellant argues that the evidence is legally insufficient to establish either of these alternative allegations, including that the City of Fort Worth is an incorporated city. Both the evidence offered at trial and facts of which we may take judicial notice provide sufficient proof of the alternative elements. Accordingly, we affirm the trial court's judgment.

---

[1]Although they were reindictments from prior cases, we use the term "indictments" for the sake of simplicity.

## II. Factual and Procedural Background

The complainant and Appellant met through a dating app. Their relationship evolved, but the complainant eventually decided that she did not want to be romantically involved with Appellant. Not relenting in his pursuit, Appellant took the complainant shopping, paid her bills, and tried to give her money. The complainant also started receiving random deliveries of food and gifts. The complainant again tried to end her relationship with Appellant, but he continued to text and call her.

Appellant's conduct then turned aggressive. Appellant threatened legal action against the complainant for return of gifts that he had given her, and the complainant received what purported to be a demand letter from a lawyer to return the items. Appellant demanded that the complainant execute a promissory note to stop him from moving forward with legal proceedings.

Over several months, the complainant's property was repeatedly damaged, and she began receiving troubling visits:

- Her car was vandalized three times.

- A person who identified himself as "Uncle Charles" visited the complainant to retrieve the items that Appellant had given her, and within minutes, the complainant received a text demanding that she return additional items to the "uncle."

- On the day of Appellant's demand that the complainant return items to the uncle, a fire was set at the door to the complainant's apartment. Appellant repeatedly called the Fort Worth Fire Department and insisted that he be given a copy of an arson report for the fire.

- A month after the apartment-door fire, someone broke out the window of the complainant's car and set its interior alight. Within hours of this fire, the complainant's brother received a text that he believed had come from Appellant; the text stated, "Put some water on it[.]"

Fort Worth Fire Department arson investigators began examining the occurrences. The investigation's results were as follows:

- Appellant had documents in his possession that included the complainant's identifying information.

- A person named Michael was identified through a search of Appellant's phone and interviewed by investigators. That interview revealed the following:

  o The "Uncle Charles" dispatched to the complainant's apartment to pick up items was Michael.

  o Appellant arranged transportation for Michael to the complainant's apartment so that he could use materials provided by Appellant to set the door of her apartment on fire.

  o Appellant later paid Michael to drive to the complainant's apartment, find her car, and place burning material in it. Michael searched for the car and found a car with a license-plate number that matched the one that Appellant had given him. Michael called Appellant to verify the license-plate number and that Appellant wanted the car burned, and Appellant affirmed that he did. Michael then broke out one of the car's windows and tossed burning material in it. Appellant later told Michael that he had dispatched another person to confirm that the car had been burned.

- Shortly after the fire at the complainant's apartment door, Appellant conducted internet searches about apartment fires in Fort Worth. Appellant later made similar searches. Appellant also searched for information on how to set a car on fire, and after the complainant's car had been burned, he searched online for car fires and arson reports.

Such was the record upon which the jury could rely to convict Appellant of the two counts of arson.

## III. Analysis

### A. Standard of review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a

5

'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**B.**     **We set forth the elements of arson.**

The Penal Code defines the offense of arson as follows: a person commits an offense when he "starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage . . . any building, habitation, or vehicle" and that person has certain alternatively described states of knowledge about the property. Tex. Penal Code Ann. § 28.02(a)(2). Two of the alternative states of knowledge are "knowing that it is within the limits of an incorporated city or town" and "knowing that it is located on property belonging to another." *Id.* § 28.02(a)(2)(A), (D).

**C.**     **We overrule Appellant's contention that the evidence is insufficient to show that the City of Fort Worth is an incorporated city or town.**

At the outset of his argument, Appellant contends that the evidence is insufficient to prove that Fort Worth is an incorporated city or town. Whatever deficiency there was at trial may be bridged by facts of which we may take judicial notice.

On the question of whether Fort Worth is an incorporated city or town, the record contains the following question and answer directed to a detective who was assigned to the Fort Worth Fire Department arson and bomb squad:

Q. Okay. And is Fort Worth an incorporated city or town in the state of Texas?

A. Yes, it is.

7

Appellant claims that this evidence "is conclusory and should be considered no evidence at all." As we interpret it, Appellant's argument is that the answer leaves a gap in proof because it does not establish that Fort Worth was incorporated at the time of the offense. We express no opinion on the question of whether an answer to a question of such common knowledge is so conclusory that it has no evidentiary value. Instead, we have two avenues to take judicial notice of the fact of Fort Worth's incorporation.

First, the Court of Criminal Appeals has held that the omission of an allegation from an indictment—that arson was committed in an incorporated city or town—is not a fatal deficiency in an indictment because the appellate court may take judicial notice of that fact. *Gonzales v. State*, 723 S.W.2d 746, 750–51 (Tex. Crim. App. 1987) ("It would thus appear that courts of appeals may indeed take judicial notice of incorporation, at least in the case of those towns or cities [that] have been incorporated by special act of the [Texas] Legislature[] or under Art. XI, Sec. 5 [of the Texas Constitution]."

As the State points out,

The [C]ity of Fort Worth was incorporated in 1873 by a special act of the Texas Legislature. Act of February 17, 1873, 13th Leg., R.S., ch. 7, art. 1[,] § 1, 1873 Tex. Spec. Laws 64, *reprinted in* 7 H.P.N. Gammel, The Laws of Texas 1822–1897, at 747 (Austin, Gammel Book Co. 1898). Per the [A]ct, this [c]ourt shall take judicial notice that the [C]ity of Fort Worth was incorporated in 1873. *Id.* at Misc. Prov. § 7, Gammel, at 764 ("This [A]ct shall have the force and effect of a public act, and all the courts of the State shall take judicial notice of the same, and it may be

8

used in all courts and places without being specially plead[ed] and without proof.").

We may take judicial notice of an adjudicative fact when it is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201. Thus, Rule 201 allows us to judicially notice the incorporation of the City of Fort Worth.

The alternative means available to establish the simple fact of Fort Worth's incorporation is discussed in *Hadley v. State*, Nos. 02-23-00317-CR, 02-23-00318-CR, 2024 WL 5083195, at *4–5 (Tex. App.—Fort Worth Dec. 12, 2024, pet. ref'd) (mem. op., not designated for publication). In *Hadley*, the question was whether there was an absence of proof that a peace officer was employed by an incorporated city—the City of Aubrey. *Id.* The appellant argued that we could not rely on Rule 201 to take judicial notice of the fact of incorporation because "the jury did not receive an instruction under Rule 201(f) 'that it may or may not accept the noticed fact as conclusive.' *See* Tex. R. Evid. 201(f)." *Id.* at *5. We concluded that we had an alternative means of judicially noticing the city's incorporation:

> Rather than address the parties' specific disagreement about Rule 201, we resolve this issue through Rule 204(b)(1), which enables us to take judicial notice of Texas municipal ordinances. *See* Tex. R. Evid. 201, 204(b)(1), 204(d) ("The court—not the jury—must determine municipal and county ordinances."). Accordingly, we judicially notice Aubrey's Ordinance 767-22, adopting its Home Rule Charter, which recognizes and declares that Aubrey is an incorporated city. City of Aubrey, Tex., Ordinance 767-22 (Nov. 16, 2022); *see* Tex. R. Evid. 204(d) ("The court's determination must be treated as a ruling on a question of law."); *see also Farahnak v. City of Southlake Bd. of Adjustment*, No. 02-21-00202-CV, 2022

WL 405899, at *1 n.1 (Tex. App.—Fort Worth Feb. 10, 2022, pet. denied) (mem. op.) (taking judicial notice of City of Southlake ordinance accessed on the city's webpage); *Gette v. State*, 209 S.W.3d 139, 143–44 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (taking judicial notice on appeal of city ordinance).

*Id.* (footnote omitted).

The City of Fort Worth's ordinances are available on the following website:

https://codelibrary.amlegal.com/codes/ftworth/latest/ftworth_tx/0-0-0-8 (last visited Aug. 5, 2025). The chapters in Part I are listed, followed by an italicized editor's note:

> Part I contains the Charter of the City of Fort Worth, adopted by the electorate at an election held December 11, 1924, and including all amendments thereto to November 8, 1983. Amendments subsequent to November 8, 1983, are indicated in the history note following the particular section of the Charter affected.
>
> Prior to November 8, 1983, the Charter had been amended on the following dates: February 14, 1928 (Ord. 1377); July 21, 1931 (Ord. 1720); December 18, 1946 (Ord. 2379); January 31, 1964 (Ord. 5091); April 8, 1975; January 26, 1976 (Ord. 7292 and 7293); April 4, 1981. Material in brackets [ ] has been added where necessary to correct obvious errors or to facilitate indexing, except that obviously misspelled words have been corrected without notation.

*See id.* (italics removed). Part I, Chapter I, Section 1 is entitled "Creation of Municipality" and states the following:

> All persons, inhabitants of the City of Fort Worth, Tarrant County, Texas, according to *the boundaries and limits of said city as hereinafter set out*, and as the same may hereafter be extended by virtue of the provisions of this Charter, or by virtue of the laws of the State of Texas applicable to such matters, now or hereafter to be enacted by the legislature of the State of Texas, be and they are hereby created and organized as a municipal corporation and body politic, and as such subdivision of the

State of Texas *are incorporated and shall hereafter be known and designated as the City of Fort Worth*, with such powers, rights, authority, duties, privileges and obligations as are hereinafter set out and prescribed.

*See id.* (emphasis added); *see also* Fort Worth, Tex., Ordinance 25328-02-2022, § 2, 2-8-2022 (May 7, 2022) (stating, "**WHEREAS**, the Fort Worth City Charter was adopted by election in 1924, creating the first home rule charter and the City Council/City Manager form of government for the City of Fort Worth").  Thus, as in *Hadley*, we take judicial notice of the ordinances referencing the incorporation of the City of Fort Worth.

**D.  We overrule Appellant's contention that the evidence is insufficient to show that he knew that the complainant's habitation or vehicle was located "within the limits" of the incorporated City of Fort Worth.**

Appellant next argument within his sole issue is cursory at best:  "[A]t trial, there was no evidence that [Appellant] knew that either the apartment/habitation or vehicle was within the limits of an incorporated city or town."  Rather, "the testimony showed that [Appellant] had only ever been to [the complainant's] apartment one time."

In response, the State marshals the evidence revealing that Appellant indeed knew that the complainant's property was in Fort Worth, including evidence that he dispatched his instrument to commit arson on that property.  We use bullet points to list this evidence:

- Numerous witnesses, including the complainant, testified that her apartment was in Fort Worth.

11

- Appellant appears to have arranged for the delivery of items to the complainant's apartment.

- Appellant visited the complainant's apartment on one occasion and indicated on another that he planned to visit her to retrieve items that he had given her.

- A document that was found in Appellant's room contained the complainant's address.

- Appellant dispatched Michael to the complainant's apartment on several occasions to demand the return of the items that Appellant had given her, to set the door of her apartment on fire, and to set her vehicle on fire. Appellant arranged for Michael's transport by Uber to the complainant's address. Before Michael placed burning materials in the complainant's car, he called Appellant to confirm the license-plate number of the vehicle that he had found at the complainant's apartment complex and also to confirm that Appellant wanted him to go forward with the arson of the vehicle. Appellant had a second person confirm that the act of arson on the complainant's vehicle had occurred.

- Appellant conducted numerous internet searches relating to arson and reports of fires; the searches occurred during the times that the complainant's property was subjected to arson. Several of these online searches were for arson reports and for fires that had occurred in Fort Worth.

These facts create an inference that Appellant knew where the complainant lived and kept her vehicle, that he had used this information to dispatch his instrument to carry out acts of arson, that he had investigated the result by dispatching another instrument to the location where the complainant lived, and that he then searched online specifically for information from Fort Worth about the results of his handiwork.

12

In arson cases, we determine whether a defendant knew the property upon which he committed arson was located within the limits of a particular city or town by asking if knowledge "can be shown by independent facts and circumstances indicative of such knowledge." *Hurts v. State*, Nos. 01-16-00254-CR, 01-16-00255-CR, 2017 WL 2812498, at *2 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Mouton v. State*, 627 S.W.2d 765, 768 (Tex. App.—Houston [1st Dist.] 1981, no pet.)). The evidence listed above is indicative of Appellant's knowledge that the complainant's property upon which he orchestrated acts of arson was located in Fort Worth.

We overrule Appellant's first subissue.

**E.  We overrule Appellant's contention that the evidence fails to show that he committed arson "knowing that it is located on property belonging to another."**

By overruling Appellant's first subissue, we have concluded that the evidence is sufficient to support his conviction. For the sake of completeness, we will address his second subissue that challenges whether the evidence is sufficient to conclude that he committed arson of a habitation and a vehicle "knowing that [they were] located on property belonging to another." *See* Tex. Penal Code Ann. § 28.02(a)(2)(D). Applying the proper standard of review to the question and examining the evidence contained in the record, we conclude that Appellant's second subissue fails.

The full extent of Appellant's argument is as follows:

The evidence is also insufficient to support any finding that the apartment of [the complainant] or [the complainant's] vehicle were located on the property of another or that [Appellant] knew that they were on the property of another. The evidence does not establish that the Terrace Apartments or the surrounding area belonged to [the complainant]. There is no evidence in the record as to who owned the Terrace Apartments. Further, as far as the vehicle on November 25, 2020, the record reflects that it was parked near the leasing office. Nothing in the record indicates if this location was part of the property of the Terrace Apartments or who the owner of this property was. It is immaterial that [the complainant] owned the vehicle as the relevant determination is who owned the property that the habitation and vehicle were on and whether [Appellant] knew the property was owned by another. In *Boykin*[ *v. State*], the Twelfth Court of Appeals overruled a challenge to the sufficiency of the evidence because evidence in the record showed that the home was owned by another and Boykin knew this. [No. 12-16-00003-CR, 2017 WL 2265686, at *4–5 (Tex. App.— Tyler 2017, no pet.) (mem. op., not designated for publication).] This record simply does not contain any such evidence. Thus, the absence of any such evidence renders the evidence at trial insufficient to support the convictions in counts one and two of the reindictment. [Footnotes omitted.]

Appellant's argument is a study in misdirection. Its premise is that Appellant must have had knowledge of who owned the underlying fee of the property where the complainant's habitation and vehicle were located. Not so. The question turns not on title but on who has the superior right to possession of the property. As the San Antonio Court of Appeals has explained,

In an arson prosecution, "[t]he allegation of ownership is merely to indicate and identify the subject of the crime, and the title to the property is not in issue." *Banks v. State*, . . . 157 S.W.2d 360, 361 ([Tex. Crim. App.] 1941). It "is permissible to charge ownership in the person who was in actual possession and control thereof." *Id.* Accordingly, the Texas Penal Code does not restrict the definition of "owner" to title holders; instead, an "owner" for purposes of the Penal Code "means a person who[] (A) has title to the property, possession of the property,

14

whether lawful or not, or a greater right to possession of the property than the actor; or (B) is a holder in due course of a negotiable instrument." Tex. Penal Code [Ann.] § 1.07(a)(35). "Possession," in turn, "means actual care, custody, control, or management." *Id.* § 1.07(a)(39). Thus, under the Texas Penal Code, the definition of owner is "expansive" and "give[s] ownership status to anyone with a rational connection to the property." *Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011); *see also Ex parte Davis*, 542 S.W.2d 192, 196 (Tex. Crim. App. 1976) ("The Legislature [has] recognized the concept that there are many types of possessory interests in property besides ownership in title.").

Because of the Penal Code's expansive definition, in arson prosecutions, a deed need not necessarily be admitted in evidence for there to be sufficient evidence of ownership. *See Tinker v. State*, . . . 179 S.W. 572[, 573] ([Tex. Crim. App.] 1915) (explaining that possession of property was sufficient to show ownership in arson prosecution and evidence of a deed was not necessary). Ownership may be proven through other means, including evidence of (1) possession through care, custody, or management, or (2) a right to possession superior to that of the defendant. *See Eaton v. State*, 533 S.W.2d 33, 35 (Tex. Crim. App. 1976) (explaining that the State may prove ownership under the arson statute by presenting evidence of title[,] possession[,] or a right to possession superior to that of the defendant).

*Lopez v. State*, No. 04-22-00545-CR, 2023 WL 8103176, at *2 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op., not designated for publication).

Applying the principles of *Lopez*, it was not the State's burden to establish who held title to the apartment complex where the complainant resided. It was necessary to show only that the complainant had the right to possess her apartment or held a rational connection to it. The complainant occupied an apartment in a gated apartment complex and had occupied it for eight years. The complainant felt that she was safe when she occupied the apartment because it had a double lock on a steel

15

door. Appellant had knowledge of the complainant's possession of the property because he had visited her there. Further, as we have already outlined, Appellant directed his actions toward the property that the complainant occupied by sending deliveries to her apartment and further directed his acts of arson to that property—why else would he do so unless he knew that she occupied it?

With respect to the complainant's vehicle, the same principle applies. Appellant committed arson against the vehicle because of the complainant's connection to it. The complainant possessed the car; she testified that she loved the vehicle, that she had filed a police report when it was damaged, and that she had attempted to take care of it. Indeed, Appellant knew of the complainant's rights in the vehicle because he had made a payment on the outstanding note. Nothing in the record indicates that Appellant ever claimed that he was entitled to possession of the vehicle. Applying the test that an owner "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor," the evidence supports the conclusion that the complainant had that greater right. *See* Tex. Penal Code Ann. § 1.07(a)(35). It was not the State's burden to establish—as Appellant suggests—who held title to the ground upon which the vehicle was parked when he directed and orchestrated the act of arson against it. The evidence required proof that Appellant targeted property in which he knew the complainant held a superior right to possession; in this regard, the evidence is sufficient.

16

We overrule Appellant's second subissue.

## IV.  Conclusion

Having overruled both subissues raised in Appellant's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 21, 2025