# PD-0321-16

## *In The Court of Criminal Appeals*

**SYBIL LEA DOYLE,**

*Petitioner/Appellant,*

**v.**

**STATE OF TEXAS,**

*Respondent/Appellee,*

On Petition for Discretionary Review from the Ninth Court of Appeals, Beaumont, Texas, No. 09-14-00458-CR

# PETITION FOR DISCRETIONARY REVIEW

CASEY LAW OFFICE, P.C.
   Stephen D. Casey
   State Bar No. 24065015
   stephen@caseylawoffice.us
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681

***Oral Argument
Requested***

FILED IN
COURT OF CRIMINAL APPEALS

June 13, 2016

ABEL ACOSTA, CLERK

RECEIVED IN
COURT OF CRIMINAL APPEALS

June 13, 2016

ABEL ACOSTA, CLERK

## IDENTITIES OF JUDGE, PARTIES, AND COUNSEL

| | |
|---|---|
| **Trial Court Judge:** | Hon. John Stevens, 359th District Court |
| **Petitioner/Appellant:** | Sybil Lea Doyle |
| **Counsel for Pet/App:** | Stephen Casey<br>CASEY LAW OFFICE, P.C.<br>info@caseylawoffice.us<br>595 Round Rock West Drive, Suite 102<br>Round Rock, Texas 78681<br>Phone: (512) 257-1324<br>Fax: (512) 853-4098 |
| **Respondent/Appellee:** | State of Texas |
| **Counsel for Respondents:** | David Glickler<br>Jonathan White<br>ATTORNEY GENERAL OF TEXAS<br>jonathan.white@texasattorneygeneral.gov<br>P.O. Box 12548<br>Austin, TX 78711<br>Phone: (512) 475-2547<br>Fax: (512) 370-9723 |
| **Court of Appeals:** | Ninth Court of Appeals, Beaumont<br>Panel: Steve McKeithen, C.J., Hollis Horton and Leanne Johnson, JJ. |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................ 6

STATEMENT REGARDING ORAL ARGUMENT .......................................... 8

STATEMENT OF THE CASE ................................................................... 9

STATEMENT OF PROCEDURAL HISTORY ............................................. 10

GROUNDS FOR REVIEW ...................................................................... 11

I.     The Court of Appeals Failed to Accord Federal Constitutional Protection When It Addressed Vagueness, Particularly When It Omitted Texas Election Code § 1.015(b) from Its Analysis. (TEX. R. APP. P. 66.3(b), (c), (d)). ........................................................................ 11

II.    The State relied upon plainly perjured, and "manufactured" testimony of Richard McDuffee for each criminal trial in this episode, testimony that changed and got "better" for the prosecution with each trial, violating Doyle's due process rights and unacceptable as a matter of law. (TEX. R. APP. P. 66.3(f)). ............................ 11

III.   The Court of Appeals had no discretion to refuse judicial notice when Texas Rule of Evidence 201(c)(2) *requires* it to take judicial notice when "supplied with the necessary information." (TEX. R. APP. P. 66.3(a)). .............................. 11

IV.   This Court can take judicial notice of the official public records, including (1) the "Gaultney" letter, and (2) the records ignored by the court of appeals and based on those records and the other evidence, GRANT the petition. .......................................................... 11

Standard for Legal Insufficiency .................................................... 11
Standard for Directed Verdicts .................................................... 12
Standard for Perjured Testimony .................................................. 12

ARGUMENT ....................................................................................... 12

1. The Court of Appeals Failed to Accord Federal Constitutional Protection When It Addressed Vagueness, Particularly When It Omitted Texas Election Code § 1.015(b) from Its Analysis................................................................. 12

    A. Section 1.015(b) critically incorporates unavoidable case law definitions within the context of interpreting "residence," making the criminal analysis vaguely circular and thus unconstitutional. ................ 14

    B. Likewise, the remaining sections that attempt to define "temporary" and "purpose" leave wide—and unconstitutional—discretion to law enforcement, judges, and juries, making it a political bully club as happened here. ........................................... 16

    C. Even the learned branches of Texas government cannot fully define "residence," which makes it an inappropriate standard for criminal notice and conviction. ................................................................. 19

2. The State relied upon plainly perjured, and "manufactured" testimony of Richard McDuffee for this trial, testimony that changed and got "better" for the prosecution from the earlier *Jenkins* and *Heath* trials, violating Doyle's due process rights and unacceptable as a matter of law.................................................................. 20

    A. As a baseline, McDuffee testified in two earlier criminal cases from this same episode that he had no doubt on the day he voted that his vote was legal. ................................................................. 21

    B. Later, after gearing up for the Doyle trial, McDuffee changed his testimony and perjured himself to aid in a conviction. ................................................................. 23

3. The Court of Appeals had no discretion to refuse judicial notice of 193 voting records in which people didn't "vote where they live," when under Texas Rule of Evidence

201(c)(2) the court "must" take judicial notice. ................................... 26

    A.    Contrary to the Court of Appeals' reluctance, it must take notice of the facts provided. ..................................... 26

    B.    The records serve under Rule 201 for proof of the federal constitutional challenge, a non-jury issue for which notice of 193 non-residential voting registrations demonstrate the very constitutional danger of arbitrary enforcement and selective prosecution the Constitution's Due Process clause prohibits. ............................................................................. 27

4.    This Court should take judicial notice of both (1) the "Gaultney letter," and (2) the public records demonstrating selective prosecution that are critical in supporting the vagueness challenge...................................... 28

    A.    Inherent to Petitioner's "mistake of law" defense is the "Gaultney letter," an official public record from the Montgomery County Voter Registrar Carol Gaultney, which expressly certified Doyle and others to vote from the Six Pines location. This Court should take judicial notice of this letter. ........................ 28

    B.    The official public records of Montgomery County demonstrate this case is all about a public political vendetta and not following the law, regardless of its constitutional infirmity. ........................................................... 29

CONCLUSION .............................................................................................. 29

PRAYER FOR RELIEF .................................................................................... 29

CERTIFICATE OF COMPLIANCE .................................................................... 31

CERTIFICATE OF SERVICE ............................................................................ 32

# INDEX OF AUTHORITIES

**CASES**

*Allen v. State,*
249 S.W.3d 680 (Tex. App.—Austin 2008)....................................................... 10

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ............................................................................................ 18

*Coury v. Prot,*
85 F.3d 244 (5th Cir. 1996) ................................................................................ 17

*Ex parte Weinstein,*
421 S.W.3d 656 (Tex. Crim. App. 2014) .................................................... 11, 20

*Gonzales v. State,*
723 S.W.2d 746 (Tex. Crim. App. 1987) ........................................................... 26

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ............................................................................................ 28

*Long v. State,*
931 S.W.2d 285 (Tex. Crim. App. 1996) ........................................................... 18

*Louis v. State,*
159 S.W.3d 236 (Tex. App.—Beaumont 2005, pet. ref'd) ....................... 11, 20

*Mills v. Bartlett,*
377 S.W.2d 636 (Tex. 1964)......................................................................... 15, 19

*Papachristou v. City of Jacksonville,*
405 U.S. 156 (1972) ............................................................................................ 13

*Pittman v. State,*
144 S.W.2d 569 (Tex. Crim. App. 1940) ........................................................... 11

*Skelton v. State,*
795 S.W.2d 162 (Tex. Crim. App. 1989) ........................................................... 11

*State v. Westergren*,
 707 S.W.2d 260 (Tex. App.—Corpus Christi 1986) ...................................... 11

*Texas Highway Dept. v. Kimble County*,
 239 S.W.2d 831 (Tex. Civ. App.—Austin 1951, writ ref'd n.r.e.)................ 17

*United States v. Cardiff*,
 344 U.S. 174 (1952) ...................................................................................... 13

*United States v. Laub*,
 385 U.S. 475 (1967) ...................................................................................... 16

**STATUTES**

Texas Election Code 1.105(b) ....................................................................... 14

**RULES**

Texas Rule of Evidence 201(d) ...................................................................... 26

**BOOKS**

Lewis Carroll, *Through the Looking Glass* (1871). ....................................... 12

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves critical constitutional protections as well as interpretation of the Texas Election Code and the interplay between civil law opinions and state agency opinions written on the Texas Election Code and their interpretation within the context of a criminal case. It appears to be a matter of first impression. Oral argument would benefit the Court.

## STATEMENT OF THE CASE

*Nature of the case*      A Montgomery County resident changed her voter location to a motel address. She was prosecuted for voter fraud, alleging to have violated the residency requirement.

After a jury trial, she was found guilty and sentenced to probation. **Tab A**

*Trial Court*      John Stevens, 359th District Court
Montgomery County

*Court of Appeals*      Beaumont

*CA Disposition*      Affirmed

*Opinion*      Horton, J., joined by Steve McKeithen, C.J., and Johnson, J. **Tab B**

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals opinion was issued on March 9, 2016. No motion for rehearing was filed.

## GROUNDS FOR REVIEW

This Court should grant review for three independent bases, including, but not limited to, the guidance of Texas Rule of Appellate Procedure 66.3)(a), (b), (c), (d), and (f).

I.     **The Court of Appeals Failed to Accord Federal Constitutional Protection When It Addressed Vagueness, Particularly When It Omitted Texas Election Code § 1.015(b) from Its Analysis. (TEX. R. APP. P. 66.3(b), (c), (d)).**

II.    **The State brazenly relied upon perjured testimony of Richard McDuffee for each criminal trial in this episode, testimony that changed and got "better" for the prosecution with each successive trial, violating Doyle's due process rights and unacceptable as a matter of law. The lower court wholly avoided addressing this point of error. (TEX. R. APP. P. 66.3(f)).**

III.   **The court of appeals had no discretion to refuse judicial notice when Texas Rule of Evidence 201(c)(2) *requires* it to take judicial notice when "supplied with the necessary information." (TEX. R. APP. P. 66.3(a)).**

IV.    **This Court can take judicial notice of the official public records, including (1) the "Gaultney" letter, and (2) the records ignored by the court of appeals and based on those records and the other evidence, GRANT the petition.**

### Standard of Review

### Standard for Legal Insufficiency

The reasonable doubt standard requires a high threshold of proof. A case will be reversed for lack of legal sufficiency when it is irrational or "unsupported by

11

proof ***beyond a reasonable doubt***." *Allen v. State*, 249 S.W.3d 680, 703 (Tex. App.—Austin 2008) (emphasis added). If circumstantial evidence provides no more than a suspicion, the jury is not permitted to reach a speculative conclusion. *Louis v. State,* 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref'd). Appellate review functions to prevent convictions not based on proof "beyond a reasonable doubt." *Skelton v. State,* 795 S.W.2d 162, 167 (Tex. Crim. App. 1989). "When the verdict is against the uncontroverted testimony, it is [the court's] solemn duty to set it aside." *Pittman v. State*, 144 S.W.2d 569, 569 (Tex. Crim. App. 1940)

**Standard for Directed Verdicts**

The trial court's denial of a directed verdict is reviewed on an abuse of discretion. *State v. Westergren*, 707 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1986).

**Standard for Perjured Testimony**

The standard of review for perjured testimony is deferential unless the reviewing court finds the conclusions of the fact finder not supported by the record. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

ARGUMENT

1.   **The Court of Appeals Omitted Texas Election Code § 1.015(b) from Its Analysis, a Required Step to Address Petitioner's Federal Constitutional Due Process Rights Under Her Vagueness Challenge.**

12

The criminal law requires the same laws to apply across the board, whether one is rich, poor, popular, or infamous. Here, the State followed the selective bidding of local political actors to prosecute Doyle and others, unfortunate political underdogs in a local election, and employed the vagueness of "residence" in the Texas Election Code, based on the State's mantra "vote where you live," to accomplish the bidding of the local political victors.[1]

The lower decisions do not comport with the plain language of the Texas Election Code, and were selectively enforced based on the State's own "private" meaning, one not present in the law.[2]

---

[1] "Vote where you live," the State repeated *ad nauseum* within the criminal trial. 4RR.18 ln 6, ln 7 (State's opening statement); 5RR.117 ln 25 (McDuffee); 5RR190 ln 6 (Goeddertz); 5RR195 ln 18-19 (Goeddertz); 6RR.40 ln 19 – 6RR.42 ln 7 (Heath); 6RR.88 ll 14-17 (Doyle); 6RR.89 ll 23-24 (same); 6RR.102 ll 14-17 (S. Doyle); 6RR.124 ln 11, 125 ln 1, 144 ll 4, 6, 146 ln 14, (State's closing argument).

[2] Just like Humpty Dumpty in Lewis Carroll's *Through the Looking Glass*, when a word is defined according to idiosyncratic, private definitions, there is no agreement.

> 'I don't know what you mean by "glory",' Alice said.
> Humpty Dumpty smiled contemptuously. 'Of course you don't — till I tell you. I meant "there's a nice knock-down argument for you!"'
> 'But "glory" doesn't mean "a nice knock-down argument",' Alice objected.
> 'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.'
> 'The question is,' said Alice, 'whether you can make words mean so many different things.'
> 'The question is,' said Humpty Dumpty, 'which is to be master — that's all.'

Lewis Carroll, *Through the Looking Glass* (1871).

Carroll is addressing the fallacy of equivocation, to be sure. When the State at trial, and the lower Court of Appeals opinion, fails to address that a significant body of court cases have permanently altered the meaning of "residence," those alterations make the the term "residence"

***A. Section 1.015(b) critically incorporates unavoidable case law definitions within the context of interpreting "residence," making the criminal analysis vaguely circular and thus unconstitutional.***

In a court of law that depends on critically sound definitions of criminal activity, the definition of "residence" is fluid and vague, unacceptable under constitutional scrutiny. "The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited." *United States v. Cardiff*, 344 U.S. 174, 176 (1952). "Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula." *Id.*

"A vague law impermissibly delegates basic ***policy*** matters to policemen, judges, and ***juries*** for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (U.S. 1972) (emphasis added). For example, in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 163 (1972), the Supreme Court reviewed the history of laws against "vagrancy," determining that the many conflicting factual determinations that may underlie identifying vagrancy led to an unconstitutional vagueness based on the ***failure of Florida's statutes to properly define*** "vagrancy." *Id.* at 161-171. The law's unconstitutional nature resulted in it casting too broad a net (capturing offenders with various reasons for

---

unsuitable for the criminal prosecution in this case and thus constitutionally infirm.

lack of employment—from those with independent wealth who had no need of work to those whose lack of employment fostered criminal activity or was the result of criminal activity). There is a similar ***failure of the Texas statute to properly define*** "residence."

The lower court failed to mention, even once, Texas Election Code 1.105(b). *See* TEX. ELEC. CODE § 1.105(b) ("Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.").

As stated in Petitioner's brief below, "is it the Code, which is supposed to trump the common law and legal opinions, or the common law and legal opinions which are supposed to interpret the Code, which is supposed to trump the common law and legal opinions . . . (ad infinitum). Where does the circular reasoning stop?" Br. App. at 24.

The seminal case on "residence" should be dispositive of this question in Petitioner's favor:

> The term "residence" is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.

*Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964) (importantly, the word

15

"permanent" has since been removed).

Further, the *Mills* Court stated, "Neither bodily presence alone nor intention alone will suffice to create the residence, ***but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue*.**" *Id*. This demonstrates the vagueness of the statute in practice.

In fact, one of the best points is made by the lower court but the wrong conclusion is drawn. In attempting to distinguish between *Mills v. Bartlett* and this situation, the lower court emphasizes that several elements come into consideration to determine residence. This "elastic"—in *Mills* terms—process, if unable to be precise in a civil setting, is fundamentally wrong to employ in a criminal setting. By distinguishing *Mills,* the lower court proves the very point of Petitioner: if the law is too vague in a civil setting, how can it possible pass constitutional muster in a criminal setting.

Criminal statutes should not be elastic nor extremely difficult to define. Because "residence" is so elastic and extremely difficult to define, even in a civil setting where the target is a preponderance, it is certainly infirm as a basis for criminal prosecution where the high threshold is beyond a reasonable doubt. To prohibit selective prosecution on vague laws, this Court should GRANT review.

> **B. Likewise, the remaining sections that attempt to define "temporary" and "purpose" leave wide—and**

16

***unconstitutional—discretion to law enforcement, judges, and juries, making it a political billy club as happened here.***

The United State Supreme Court's warning against leaving determination of criminal standards to juries raises another powerful bulwark against the proceedings below:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly **delegates basic policy matters** to policemen, judges, and **juries** for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

*Grayned*, 408 U.S. at 108-109 (emphasis added).

Thus, "[c]rimes are not to be created by inference." *United States v. Laub*, 385 U.S. 475, 487, 17 L. Ed. 2d 526 (1967).

This criminal prosecution here, as pointed out by the lower court, focused on political underdogs who lost an earlier civil contest over the validity of their votes. *See* Slip Op. at 3-4. ***It remains axiomatic that a person cannot know her actions violate the law when the legality of her claimed residence is not established until a civil trial determines that the defendant is not a resident of the location from which she chose to vote.***

Subsequent to that civil trial, Doyle, one of the now unpopular defendants, became the subject of this case. Is it any question that a jury should not be deciding her criminal fate on an unpopular matter that took an entire civil case to determine was/was not valid? If it took a judge and jury to determine validity, how could Doyle possibly be expected to know *sua sponte* that her behavior was criminal?

Furthermore, "domicile" may include where a person exercises civil and political rights. *See Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996). The Austin Court of Appeals stated that a person may have more than one residence at any given time. *See Texas Highway Dept. v. Kimble County*, 239 S.W.2d 831, 832 (Tex. Civ. App.—Austin 1951, writ ref'd n.r.e.).

The Supreme Court of the United States and this Court have strongly protected citizens in three respects when First Amendment freedoms such as voting are in jeopardy of criminal punishment: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *See Grayned*, 408 U.S. at 108-09, 92 S.Ct. 2294; *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996); *see generally Anderson v. Celebrezze*, 460 U.S. 780 (1983) (voting as a constitutional matter implicates First Amendment expression and association rights). As shown by the next section, even learned

18

attorneys for the State cannot succinctly define "residence" to avoid its constitutional infirmity as a criminal standard, for which reason this Court should GRANT review.

> ### C. Even the learned branches of Texas government cannot fully define "residence," which makes it an inappropriate standard for criminal notice and conviction.

In no less than fifteen (15) pages, former Texas Attorney General Greg Abbott attempted to explain the definition of residency for purposes of voting. *See* DX-3 (Texas Attorney General Opinion GA-0141). State's counsel would have it be a simple "vote where you live." *See* n.1, *supra*. But even State counsel's own former boss **disagrees**. After providing Texas Election Code's § 1.015 definition, GA-0141 (DX-3 at trial) dives right into *Mills v. Bartlett* as an authoritative source on how to "interpret" the concept of "residence" in the context of voter eligibility. GA-0141 evaluates "residence" within the **specific context of concern about criminal culpability** and the **threat of prosecution** for illegal voting. *See* DX-3 at 1. And the *Mills* court certainly *does not* clear up the definition.

> The term "residence" is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.

*Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964).

19

Should the criminal laws and prosecutions in Texas be founded upon "elastic" and "extremely difficult" concepts? Surely not. The analysis in *Mills v. Bartlett*, cited by the Texas Attorney General, which is the seminal opinion in the State of Texas (this headnote is cited sixteen (16) times for this proposition and forty-two (42) times for its discussion of "residence," generally), demands a fact-intensive evaluation of competing interests. This *ad hoc* approach and idiosyncratic analysis is exactly the framework rejected by the Supreme Court in *Grayned* and its progeny. *See Grayned*, 408 U.S. at 108-09 (criminal laws must not be based on *ad hoc*, subjective standards by policemen, judges, and juries).

**2. The lower opinion wholly avoids the brazenly perjured testimony of Richard McDuffee for this trial, testimony that changed and got "better" for the prosecution from the earlier *Jenkins* and *Heath* trials, violating Doyle's due process rights and unacceptable as a matter of law.**

As Doyle's intent was plainly at issue, the only two persons other than Doyle and her witnesses to speak to her intent were James Stilwell, a RUD attorney who had worked on the civil dispute, and Richard McDuffee, one of the RUD voters. Admittedly, both Stilwell and McDuffee were engaging in speculation. Stilwell, a clearly biased party, shed little objective light on the process, as his testimony largely consisted of authentication of prosecution exhibits. McDuffee's testimony, on the other hand, while similarly speculative, was absolutely critical for the prosecution. McDuffee, one of the ten new voters in the 2010 RUD election, took

the stand for the State in an attempt to show "knowledge by association," basically that because **he** believed he was ineligible to vote, that **Petitioner** must have also known she was not eligible to vote.

In accordance with the standard of review, the jury is not allowed to speculate but must prove the elements beyond a reasonable doubt. If circumstantial evidence provides no more than a suspicion, the jury is not permitted to reach a speculative conclusion. *Louis v. State,* 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref'd). When the jury has speculated and thus the verdict is not properly supported, the reviewing court must throw out the conviction if based on perjured testimony because it violates the rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014). ("The State's use of *material* false testimony violates a defendant's due-process rights under the Fifth and Fourteenth Amendments to the United States Constitution.") (emphasis in original). The testimony not need be harmful, only material. *Id.* Here, the testimony was material.

### A. As a baseline, McDuffee testified in two earlier criminal cases from this same episode that he had no doubt on the day he voted that his vote was legal.

This case provides a unique opportunity because McDuffee testified in two other criminal trials involving this 2010 RUD election. McDuffee testified in Cause No. 12-03-02580-CR, *State of Texas v. Adrian Heath*, that he boldly, succinctly, and

21

unequivocally stated that he did not believe he was committing a felony when he went in and voted in the RUD election.

> Q. (Defense counsel on cross-examination) Then did you believe you were committing a felony when you went and cast that vote on May the 8th?
>
> A. (McDuffee) **No**.

*See* Br. App. Appx., Tab D at 187 ll 17-19 (emphasis added).

In the trial of *State of Texas v. Jim Jenkins*, No. 12-03-02579, McDuffee's response was that he filled out his voter registration card with no concern, but felt there was a "[d]anger" when he received a letter from the district attorney's office, but that the danger was "vague." *See* Br. App. Appx., Tab B at 179 ln 19 - 181 ln 18. McDuffee also stated that the decision was made by each person in his own mind, and that his meeting of the mind and presence established his residence. *Id.* at 216 ln 3; 217 ln 2.

When pressed on cross-examination, McDuffee stated that the honest truth was he did not know at the time he cast his ballot that he was voting illegally:

> Q. (by Defense attorney) [O]n the day that you voted, you did not know that [you were voting illegally], did you?
>
> A. (by McDuffee) No.
>
> Q. And that's the honest truth, isn't it?
>
> A. ***That's the honest truth***." (emphasis added).

*Id.* at 218 ll 13-25.

***B.*** ***Later, after gearing up for the Doyle trial, McDuffee changed his testimony and perjured himself to aid in a conviction.***

Apparently not happy McDuffee's testimony in the earlier *Heath* and *Jenkins* cases, the State used McDuffee again in Doyle's case, and McDuffee lied:

**5RR143:**

> Q. (Walker) Did you know that you were casting an illegal vote at that time?
>
> A. (McDuffee) As I knew the voting rules at that time and from a letter I received the district attorney warning of it, yeah, I was a little apprehension [sic] when I went and signed that.
>
> Q. Did you know that you were making an illegal vote? Is it your opinion that you made an illegal vote today?
>
> A. Today, yes. It was an illegal vote.
>
> Q. Let's talk about on the day of the election. When you walked in that voting booth, did you know that you were costing [sic] an illegal vote?
>
> A. I had a doubt, but I did not have a total knowledge of the law saying yes or no. So I can't draw a definitive line.
>
> Q. Would it be fair for me to say that your -- you had some apprehension, but you did not know that you were casting an illegal vote?
>
> A. I had apprehension on voting. I cannot answer that positively on yes or no.

Then, McDuffee changes his view.

23

**5RR.147:**

Q. So your statement, your testimony here today is that I knew I was committing a crime, but I thought I could get away with that. Is that a good summation?

A. It would fly under the radar, ten votes.

Next, when confronted prior to a break about his prior testimonies, McDuffee feels the pressure of his lie and begins to complain about the weighing out of the chances of being prosecuted and therefore equivocates again:

**5RR.148**

Q. Do you recall giving a different answer when asked if you knew whether or not your vote on that day was illegal?

A. There's been several trials and the way I answer the question, is it 100 percent the way I say each trial? No. Do I -- I change the way I word something. Is it illegal? I thought on the day of the vote, figured it was maybe a 50/50 percent chance, toss the coin, more than likely it was going to be maybe a nickel toss. Not going to be worth time and effort. But it's blown up into this. So can I say I knew black and white on that day, at that moment I went in that little building and signed on a little piece of paper because they did not have a machine or anything. It was the first time they had ever held an election. From the time this RUD board had been in the existence, they had never had -- there was no residence in the district, so there was never any elections.

Then, again, after *another* break, and on more direct questions, McDuffee again waffles, despite his *Heath* and *Jenkins* testimony, when attempting to answer the question:

24

Okay. Do you recall testifying in previous hearings regarding this case?

A. Yes.

Q. And we had an opportunity to review some of that testimony before you -- during the break, correct?

A. Correct.

Q. And you don't contest the copy of the transcript I have as far as accuracy?

A. No.

Q. Those were the questions asked of you and those were the answers you used?

A. Correct.

Q. Did you ever give a different answer to those questions or similar type questions when asked about your state of mind when you cast that ballot?

A. The best I can remember, I never said that I thought it was totally legal.

Q. Let me ask the converse of that. Did you ever think it was totally illegal?

A. Only if I was the Defendant. It would be totally illegal. Does that make sense? I mean -- I'm just saying.

And then again McDuffee waffles:

**5RR.157**

Q. (By Mr. Walker) Okay. Prior to casting the vote, did you believe it was legal to go forward?

A. 100 percent legal to go forward?

Q. I think that's kind of like being kind of pregnant. It's a yes-or-no question. Something is legal or something is illegal. So the question, once again, is the same as the question was before. Did you believe it was legal to go forward prior to the election?

A. Again, I can't give you a cut and dry. My scenario today is unfortunately back then at that time, I had another mind set and my answer was yes or no. But it's a gray area.

This Court should not permit this criminal conviction based on Richard McDuffee's *post hoc* vicissitudes.

3. **The Court of Appeals had no discretion to refuse judicial notice of 193 voting records in which people didn't "vote where they live," when under Texas Rule of Evidence 201(c)(2) the court "must" take judicial notice.**

   *A. Contrary to the Court of Appeals' reluctance, it must take notice of the facts provided.*

Texas Rule of Evidence 201(d) states that judicial notice is "Mandatory" "if requested by a party and supplied with the necessary information." TEX. R. EVID. 201(d). Public government documents are subject to such notice. *Gonzales v. State*, 723 S.W.2d 746, 751 (Tex. Crim. App. 1987) (Judicial notice can be requested of a

26

fact when "its existence is so easily determinable with certainty from sources considered reliable, it would not be good sense to require formal proof.") (noticing factual evidence of incorporation by city in support of arson indictment when it was not presented in court).

The appellate court has zero discretion whether to take judicial notice when it was requested by Petitioner and supplied with the necessary public documents.

> **B. The records serve under Rule 201 for proof of the federal constitutional challenge, a non-jury issue for which notice of 193 non-residential voting registrations demonstrate the very constitutional danger of arbitrary enforcement and selective prosecution the Constitution's Due Process clause prohibits.**

Vague criminal laws endanger the public, the *Grayned* Court explained, by "arbitrary and discriminatory application." 408 U.S. at 109. One need look no further than the Montgomery County Voter Records. Almost two-hundred (200) people have registered to vote at commercial and government locations. Some registrations even exist at the Montgomery County District Courthouse where this criminal trial took place!

**4. This Court should take judicial notice of both (1) the "Gaultney letter," and (2) the public records demonstrating selective prosecution that are critical in supporting the vagueness challenge.**

> **A. Inherent to Petitioner's "mistake of law" defense is the "Gaultney letter," an official public record from the Montgomery County Voter Registrar Carol Gaultney, which expressly certified Doyle and others to vote from the Six Pines location. This Court should take judicial notice of this letter.**

27

Inherent to the state of mind of Petitioner is the "Gaultney letter," an official declaration by the Montgomery Count Voter Registrar, that Petitioner was eligible to vote from the Residence Inn address. It is attached as Appendix C to this petition.[3] This is further information that shows the registration requirements as a matter of law are vague. If the very person charged with telling voters they are not eligible cannot but issue a certification to those voters telling them they are eligible, how can the voter then not have a frame of mind of eligibility? Coupled with the ***plainly perjured testimony of McDuffee***, this fact pattern cries out for reversal. This Court should GRANT the petition.

### B. The official public records of Montgomery County demonstrate this case is all about a public political vendetta and not following the law, regardless of its constitutional infirmity.

This Court is requested to take judicial notice of the 193 records supplied to the Court of Appeals, Appellants' Brief, Appendices F-J. This is the proof of arbitrary and discriminatory application. They are publicly filed with the Montgomery County Voter Registrar which is a source whose accuracy cannot

---

[3] Appended to this brief as Appendix "C" is a "true and correct copy as taken from official county records as of 10/29/2013" of the Certification of Voter Registration and the attachment that listed Doyle as an eligible voter of the RUD prepared by Ms. Carol Gaultney, the Elections Administrator/Voter Registrar for Montgomery County. This Court can take judicial notice of this official record on appeal. See TEX. R. EVID. 201(f); *Gonzales v. State*, 723 S.W.2d 746, 751-52 (Tex. Crim. App. 1987). *See* Appendix "C."

reasonably be questioned.[4] Taking notice may be inconvenient, as it shows a glaring "punishment" of Petitioner by the political powers that be; however, protection of constitutional rights is rarely convenient. Given this level of arbitrary enforcement, the curtain is "completely removed," so to state, and the trial proceeding is revealed to be a selective, politically-motivated, selective prosecution.[5] This Court should GRANT the petition.

## CONCLUSION

This case exemplifies a policy debate clothed in the proceedings of a criminal trial.[6] The legislature's subjective vagaries, evidenced across the state agencies' and courts' varying interpretations, fail to offer a clear standard of behavior for Petitioner, making this case an exemplar of constitutional infirmity. This Court should GRANT review.

## PRAYER FOR RELIEF

The petition should be granted, and the judgment should be reversed.

Respectfully submitted,

---

[4] This Court can take judicial notice of these official public records on appeal. See TEX. R. EVID. 201(f); *Gonzales v. State*, 723 S.W.2d 746, 751-52 (Tex. Crim. App. 1987).

[5] It is not conceded that these other 193 voters are in violation of any law; rather, the incredible vagueness of the law serves the impermissible purposes that are warned about from the Texas Supreme Court.

[6] *See Grayned*, 408 U.S. at 108-109 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.")

CASEY LAW OFFICE, P.C.

By:    /s/ Stephen Casey
       Stephen Casey
       State Bar No. 24065015
       stephen@caseylawoffice.us
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098

**COUNSEL FOR PETITIONER/APPELLANT
SYBIL LEA DOYLE**

## CERTIFICATE OF COMPLIANCE

The preceding brief contains 4,472 words within the sections identified under Tex. R. App. P. 9.4, typed upon Microsoft Word for Mac 2011, Baskerville 14 point font.

/s/ Stephen Casey

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Petition for Review and Appendix were served on Wednesday, April 20, 2016, on the following via electronic transmission:

David Glickler
Jonathan White
Attorney General of Texas
jonathan.white@texasattorneygeneral.gov
P.O. Box 12548
Austin, TX 78711
Phone: (512) 475-2547
Fax: (512) 370-9723

/s/ Stephen Casey

**APPENDIX TAB A – TRIAL COURT JUDGMENT**

RECEIVED AND FILED
FOR RECORD
at_____O'Clock_____

MAY 2 2 2014

BARBARA GLADDEN ADAMIC
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____Deputy

SID#: TX50021125
TRN#: 9151287846
DA#:121002.1
Plea of Guilty or Nolo-Jury Waived-Community Supervision

CAUSE NO. 12-03-02583-CR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | MONTGOMERY COUNTY, TEXAS |
| Sybil Lea Doyle | § | 359TH ~~9TH~~ JUDICIAL DISTRICT |

## JUDGMENT AND ORDER

On __MAY 22__, 2014, the above entitled and numbered cause wherein the Defendant is charged with the felony offense of ILLEGAL VOTING, came to be heard. The State appeared by and through its Assistant District Attorney, Johnathan White, and the Defendant, Sybil Lea Doyle, appeared both in person and by counsel, Jarrod L. Walker, and both parties announced ready for trial. The Defendant, in person and by and through her attorney, waived the right of trial by jury in writing; the Assistant District Attorney approved and consented in writing to the waiver of a jury; and, the Court approved and consented to same. The Defendant, having been duly arraigned, entered her plea of Guilty. It appeared to the Court that the Defendant was mentally competent and that her plea was free and voluntary. The Court admonished the Defendant as to the consequences of such plea and the Defendant persisted in entering her plea of Guilty. Therefore, the Court accepted the Defendant's plea.

The Court, having heard the Indictment read and the Defendant's plea thereto, postponed a finding of guilt and ordered that a Pre-Sentence Investigation be conducted by the Community Supervision and Corrections Department.

And, the Court on this date, __MAY 22, 2014__, after reviewing the evidence submitted and determining that it was sufficient to show the guilt of the Defendant, and having considered the Pre-Sentence Investigation Report and arguments of counsel, is of the opinion and, therefore, finds the Defendant guilty of the offense as charged and that the offense was committed on May 08, 2010.

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by this Court that the Defendant is guilty of the offense of ILLEGAL VOTING and that said Defendant committed said offense in Montgomery County, Texas on May 08, 2010, as charged in the Indictment, and that her punishment is ~~assessed~~ at confinement in the Texas Department of Criminal Justice, Institutional Division for ~~FIVE (5)~~ THREE (3) years, and a fine of $5000, and that the State of Texas have and recover of the Defendant all costs expended in this prosecution, for which let execution issue.



Minute
Date: JUN 1 1 2014

110

CAUSE NO. 12-03-02583-CR
STATE OF TEXAS V. Sybil Lea Doyle

However, it appearing to the Court from the evidence that the ends of justice and the best interest of the public as well as the Defendant will be served by the suspension of the imposition of sentence herein;

IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the imposition of sentence herein is hereby suspended and that the Defendant is hereby placed on community supervision for the period of (5) years on the following terms and conditions, to-wit:

## CONDITIONS OF COMMUNITY SUPERVISION

That during the term of community supervision the Defendant is hereby **ORDERED** to:

a. Commit no offense against the laws of this State or any other State or the United States;
b. Avoid injurious or vicious habits;
c. Not use or consume alcohol or controlled substances;
d. Avoid persons and places of disreputable or harmful character;
e. Work faithfully at suitable employment as far as possible;
f. Support her dependents;
g. Remain within the limits of the State of Texas, unless given permission to leave therefrom;
h. Report to her community supervision officer at the Montgomery County Community Supervision and Corrections Department at least <u>monthly</u> and at all other times as directed by her community supervision officer.

   Should the community supervision of the Defendant be transferred to a supervising department of another state, IT IS ORDERED that the Defendant shall report in person to the supervising officer of that department at least <u>monthly</u> and at all other times as directed by the supervising officer of that department. In addition, the Defendant is ORDERED to report by mail to the Montgomery County Community Supervision and Corrections Department at least monthly, and at all other times as directed by her Montgomery County community supervision officer;

   Should the community supervision of the Defendant be transferred to a supervising department of another county of this state, IT IS ORDERED that the Defendant shall report in person or by mail as directed by the Montgomery County supervising officer to the Montgomery County Community Supervision and Corrections Department at least <u>monthly</u> until such time as the Montgomery County Community Supervision and Corrections Department receives notification of acceptance by the county where the Defendant's community supervision is being transferred. If the Defendant's community supervision is accepted by another county, the Defendant is ORDERED to report in person to the supervising officer of that

- 2 -



department at least monthly and at all other times as directed by the supervising officer of that department. Should the county not accept transfer of the Defendant's community supervision, the Defendant is ORDERED to report in person to the supervising officer of the Montgomery County Community Supervision and Corrections Department at least monthly, and at all other times as directed by the Defendant's Montgomery County community supervision officer;

i. Permit the community supervision officer to visit her at her home or elsewhere;

j. Submit to an alcohol and drug evaluation to determine the existence of a drug or alcohol dependence condition, and to determine an appropriate course of conduct necessary for the rehabilitation of the Defendant's drug or alcohol dependence. The Defendant will attend the appropriate counseling prescribed by this evaluation at the Defendant's expense;

k. (1) Submit to medical, chemical, or any other test or examinations for the purpose of determining whether or not she is using or is under the influence of alcohol, narcotic drugs, marijuana or any other controlled substances and pay all costs associated with such tests and examinations. Detection of any controlled substance or alcohol shall be construed as a violation of her community supervision;
(2) Not use any products, devices, or liquids to adulterate, dilute, mask or any way alter a sample or give a false testing sample. Test results indicating diluted, masked or altered samples will be presumed to be a "positive" test result that may result in revocation of her community supervision;

l. Contribute 240 hours in community service restitution at an organization approved by the Court and designated by the Community Supervision and Corrections Department. Community restitution is **ORDERED** to be performed at the rate of 16 hours per month beginning JUNE, 2014 ;

m. Enroll in and complete the G.E.D. preparatory course as directed by her community supervision officer if Defendant does not possess a minimum of a G.E.D. Said course shall be completed and the G.E.D. obtained within one (1) year from this date;

n. Defendant shall submit his person, property, place of residence, vehicle, and/or personal effects to search at any time, with or without a search warrant or warrant of arrest, by any community supervision officer or law enforcement officer;

o. Defendant shall not possess any firearm(s);

p. Pay a community supervision fee of $60.00 per month to the Community Supervision and Corrections Department between the 1st and 15th day of each month hereafter during community supervision, beginning JUNE 22, 2014;

q. Pay $50.00 Crime Stoppers fee to the Community Supervision and Corrections Department on or before AUGUST 22, 2014 ;

r. Pay $85.00 to the Community Supervision and Corrections Department for the Pre-Sentence Investigation report on or before JULY 22, 2014 ;

s. Pay $359⁰⁰ Court costs; $ 0.00 restitution for the benefit of N/A; $ Ø

Minute

Date:_____

- 3 -

CAUSE NO. 12-03-02583-CR
STATE OF TEXAS V. Sybil Lea Doyle

Court appointed attorney fees; and $5000 fine, all in one lump sum payment to the Montgomery County District Clerk on the day this Judgment is entered **<OR>** pay in installments, the total sum of the foregoing to the Montgomery County District Clerk, including $2.00 fee for each payment made (pursuant to Article 102.072, T.C.C.P.), as set forth in the Collection Agreement which is incorporated herein and made part of this judgment as if copied verbatim;

_____ _____

_____ ;

The Clerk of this Court will furnish the Defendant a Certified copy of this Order, and shall note on the Docket Sheet the date of delivery of this Order.

SIGNED AND ENTERED this the 22nd day of _____MAY_____, 2014.

_____
Judge Presiding

Copy received: _____
Defendant

District Clerk of
Montgomery County, Texas                    RIGHT THUMB PRINT

By: _____, Deputy

Minute

Date: _____

- 4 -

113

**APPENDIX TAB B – COURT OF APPEALS OPINION**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00458-CR
_____

**SYBIL LEA DOYLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-03-02583 CR**

**MEMORANDUM OPINION**

A jury convicted Sybil Lea Doyle of voting in a May 2010 election to select the directors of the board of The Woodlands Road Utility District No. 1 when she knew she was not eligible to vote in that election. *See* Tex. Elec. Code Ann. § 64.012(a)(1) (West Supp. 2015).[1] Doyle elected to have the trial court assess her punishment. Following Doyle's sentencing hearing, the trial court assessed a three-

---

[1] We cite to the current version of the statute, as the 2011 amendment to section 64 of the Election Code does not affect the issues that we resolve in this appeal.

year prison sentence and a fine of $5,000. However, the trial court then suspended Doyle's sentence, and placed her on probation for five years.

Doyle presents five issues in her appeal, arguing (1) that a vague definition of "residence" in the Texas Election Code violated her right to due process; (2) that the evidence is legally insufficient to overcome the presumption given to Doyle's intent on questions regarding her residence; (3) that the evidence is legally insufficient to support the jury's finding that she voted illegally; (4) that the evidence established Doyle's affirmative defense of mistake, a defense that Doyle used at trial to argue that she thought she could legally vote in the election even though she never intended, while within the District, to make a home there; and (5) that she received ineffective assistance of counsel during her trial. We conclude that Doyle's issues are without merit, we uphold the jury's verdict, and we affirm the trial court's judgment.

Background

Shortly before the May 2010 primary election, a group of ten persons,[2] which included Doyle and her daughter, Roberta Cook, filed voter registration

---

[2] The group included James Jenkins, Adrian Heath, Thomas Curry, Bill Berntsen, Peter Goeddertz, Richard McDuffee, Sybil Doyle, Roberta Cook, Benjamin Allison, and Robert Allison. Doyle, Cook, Jenkins, and Heath were convicted by a jury of voting illegally in the same election that is at issue in Doyle's appeal. *See generally*, *Cook v. State*, No. 09-14-00461-CR, 2015 WL

applications with the Elections Administrator of Montgomery County. In them, the ten voters identified their residences as 9333 Six Pines Drive or as 9333 Six Pines. A Marriott Residence Inn is located at the Six Pines address these ten voters used to identify their respective places of residence. The Marriott lies within the District's election boundaries.

A total of twelve individuals voted in the May 2010 District's election. Ten voters, all members of the group claiming the Marriott as their residence, voted for Peter Goeddertz, Bill Berntsen, and Richard McDuffee, who were challenging the District's incumbent directors in the election. Two other voters cast ballots in the May 2010 election, and these two voters cast their ballots in favor of the District's incumbent directors.

After the election, the incumbent directors contested the results of the May 2010 election regarding the District's directors. Following the trial of the election contest, the judge presiding over the contest found that the voters who had listed their residences at 9333 Six Pines Drive or 9333 Six Pines did not cast legal votes because none of them resided within the boundaries of the District. The presiding judge over the election contest case also found that the two votes cast for the

7300664 (Tex. App.—Beaumont Nov. 18, 2015, pet. filed) (mem. op., not designated for publication); *Jenkins v. State*, 468 S.W.3d 656 (Tex. App.—Houston [14th Dist.] 2015, pet. granted).

3

incumbent directors were valid, and it declared the incumbent directors to have won the May 2010 election. Richard McDuffee, Peter Goeddertz, Bill Berntsen, Adrian Heath, James Jenkins, Thomas Curry, Benjamin Allison, and Robert Allison filed an appeal challenging the judgment overturning the election of Goeddertz, Berntsen, and McDuffee. We affirmed the judgment rendered in the election contest case, given the trial court's resolution of the facts involved in that dispute. *See McDuffee v. Miller*, 327 S.W.3d 808, 811 (Tex. App.—Beaumont 2010, no pet.).

In 2012, the grand jury indicted Doyle for voting illegally in the May 2010 road utility district election. Subsequently, Doyle and Cook were tried before a jury in one proceeding. At the conclusion of their trial, the jury found both Doyle and Cook guilty of voting illegally in the District's May 2010 election.

Doyle and Cook filed appeals complaining of the jury's findings that they were guilty of voting illegally. We previously affirmed Cook's conviction, and we discussed in some detail the evidence introduced during the trial that involved both Cook and Doyle. *See Cook v. State*, No. 09-14-00461-CR, 2015 WL 7300664, at *1 (Tex. App.—Beaumont Nov. 18, 2015, pet. filed) (mem. op., not designated for publication).

## Indictment

In issue one, Doyle challenges the trial court's denial of her motion seeking to quash her indictment for voting illegally in the District's May 2010 election. On appeal, Doyle argues that the trial court should have quashed her indictment because the Texas Election Code employs an indefinite and circular standard to determine a voter's residence. We review challenges to rulings on motions to quash indictments on appeal using a de novo standard. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).

In evaluating Doyle's argument that the Election Code's residence requirements are so uncertain they cannot be enforced, we "construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). A statute is unconstitutionally vague when a person of "'common intelligence must necessarily guess at its meaning and differ as to its application[.]'" *Baker v. State*, 478 S.W.2d 445, 449 (Tex. Crim. App. 1972) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). When a statute is not ambiguous, we assume the Legislature meant what it has expressed, and a court should not add or subtract

5

from the meaning of the statute. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

Under the Election Code, an eligible voter must "be a resident of the territory covered by the election for the office or measure on which the person desires to vote[.]" Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010). Section 1.015 of the Texas Election Code provides meaning to what is required to be a "resident" under section 11.001, as it provides:

> (a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.
> (b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.
> (c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.
> (d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.
> (e) A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located.

*Id.* § 1.015 (West 2010).

Relying on *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964), Doyle suggests that the Texas Supreme Court recognized that the definition of "residence" is unclear. Doyle concludes that the meaning of the term "residence,"

6

as used in in section 1.015 of the Texas Election Code, is so vague that it "fails to pass constitutional muster in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution."

However, the Texas Supreme Court in *Mills* was not asked to address a due process challenge to the Election Code based on the meaning of the term "residence." *Id*. at 636-37. Instead, the issue addressed by the *Mills* court concerned one candidate's challenge that claimed another candidate was not a resident of the County for the purpose of an election to a county office. *Id.* And, while the *Mills* court noted that "[v]olition, intention and action are all elements to be considered in determining where a person resides[,]" the Court allowed the factfinder to draw the inferences that were available from the evidence to decide whether the candidate who was being challenged had become a resident of the county in which he sought election to office. *Id.* at 637-38. In summary, the *Mills* court did not hold that any of the provisions in the Texas Election Code were unenforceable on the grounds that the requirement that a candidate be a resident of the county where the election occurred were unclear. *Id*.

Although several factors are used under the Election Code to determine whether an individual has established "residence" within an election district, the fact that several factors are used does not demonstrate that persons of ordinary

7

intelligence cannot determine whether they are eligible (or ineligible) to vote in an election when they reside outside an election district's boundaries. The plain language of section 1.015 makes it clear that a voter cannot establish residence by being in a place temporarily while at the same time never intending to make that place her home. Tex. Elec. Code Ann. § 1.015(a), (d). The provision is not vague, and reasonable voters would not be misled by the Election Code's requirement that the voter both be present within the election boundaries of the entity holding the election and while there, the voter must also have the intent to make a home within the district to cast a legal vote in the entity's election. Because the residence requirements of the Election Code regarding residence are not ambiguous and they do not subject voters like Doyle to absurd results, we overrule her first issue. *See Tapps*, 294 S.W.3d at 177; *see also Williams*, 253 S.W.3d at 677.

Sufficiency of the Evidence

In issues two through four, Doyle challenges the trial court's denial of her motion for directed verdict. According to Doyle, the evidence is legally insufficient to support the jury's verdict, and the jury could not reasonably have rejected her defense that she was mistaken about her ability to register and vote in the District's election. Doyle contends the State failed to present sufficient evidence that she voted knowing that she was ineligible to do so, and she argues that when she

8

decided to register and vote, she reasonably relied on statements of the Attorney General and Secretary of State regarding her eligibility. We address two through four together.

Doyle's second and third issues complain that the evidence is insufficient to support the jury's finding that she was guilty of voting illegally in the District's election. Therefore, we note the standard of review that applies to the sufficiency arguments that Doyle raises in issues two and three. When an appellant challenges the sufficiency of the evidence supporting a conviction in a criminal case, appellate courts consider all of the evidence in the light most favorable to the verdict, and decide, after reviewing the evidence in that light, whether a rational trier of fact could have found the appellant guilty of the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In reaching a verdict, juries are entitled to view circumstantial evidence as evidence that is just as probative as direct evidence in deciding whether the defendant is guilty of the crime charged in the indictment. *Temple*, 390 S.W.3d at 359. With respect to whether a defendant acted with the required intent to violate a criminal statute, evidence relevant to the defendant's intent is reviewed using the same standard that is used to review whether the evidence is sufficient to prove any of the other elements of the crime

9

that is being challenged by the appellant. *Laster v. State*, 275 S.W.3d 512, 520-21 (Tex. Crim. App. 2009). In reviewing sufficiency challenges, appeals courts are required to give the jury's findings and its conclusions deference, as it was the jury's responsibility to fairly resolve all conflicts in the testimony, the jury's responsibility to weigh the evidence, and the jury's responsibility to draw reasonable inferences from the basic facts to resolve whether the defendant is guilty of violating the criminal provision that is at issue in the trial. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Doyle's challenge in issue four to the jury's rejection of her affirmative defense of mistake is reviewed using a somewhat different standard than the one used to review issue two and three. When reviewing legal sufficiency issues that challenge a jury's rejection of an affirmative defense, an appellate court "should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not." *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). The jury's rejection of an affirmative defense is legally insufficient only when the evidence conclusively proves the affirmative defense, and no reasonable factfinder would reasonably conclude otherwise. *Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013). When reviewing a factual-sufficiency challenge to the jury's rejection

10

of a defendant's affirmative defense, the appellate court examines the evidence in a neutral light. *Butcher*, 454 S.W.3d at 20. A defendant's factual-sufficiency challenge may be sustained "only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671.

In issues two, three, and four, Doyle's arguments focus on the requirements under the Election Code that a person establish a residence within the election district to cast a legal vote in an election that is conducted by an entity within those boundaries. *See* Tex. Elec. Code Ann. § 1.015. Doyle suggests the evidence is insufficient to show that she violated the Election Code, given her difficulty in understanding the law. Under Texas law, a person votes illegally by voting or attempting "to vote in an election in which the person knows the person is not eligible to vote[.]" Tex. Elec. Code Ann. § 64.012(a)(1). A person alleging a mistake of law must show that she reasonably believed the charged conduct did not constitute a crime, and that she acted in reasonable reliance upon one of the following:

11

(1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

Tex. Penal Code Ann. § 8.03(b) (West 2011).

Whether Doyle could establish that she was a resident within the boundaries of the road utility district to vote in the road utility district election without ever intending to make the Marriott her home was an issue on which the jury heard conflicting testimony. Given the jury's finding of guilt, the jury may have inferred from the evidence that Doyle never intended to make the Marriott or any other place within the boundaries of the District her home on the occasions that she was temporarily within the District's election boundaries. Or, the jury may have decided that Doyle subjectively believed she could vote in the election without ever having intended to make her home within the District's boundaries, but then found that Doyle's subjective belief that she could vote without ever intending to make her home there unreasonable. Under the standard of review that applies to her legal sufficiency challenges, we are required to view the evidence in the light that most favors the jury's finding that she was guilty of voting illegally, and we must give the jury's findings deference when the jury's inferences from the evidence were reasonable. *See Hooper*, 214 S.W.3d at 13. Although there were

12

conflicts in the testimony about Doyle's motives for casting a vote in the District's election, the jury was entitled to "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs" in resolving them. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). We also note that the law does not require that "every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Id*. (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

There was testimony before the jury that related specifically to Doyle's knowledge of the law and her motives for voting in the District's election. Doyle's husband testified during the trial that he and Doyle reside at an address outside the road utility district. Doyle's husband explained that the day before the District's election, he took Doyle and Cook to a one and a half hour long meeting at the Marriott, where they talked about an Attorney General Opinion and a Secretary of State opinion that addressed the residency requirements under the Texas Election Code. Doyle's husband acknowledged that Doyle and Cook did not spend the night before the election at the Marriott; instead, after the meeting, they returned to their homes, and the next day, Doyle and Cook voted in the District's election. It was undisputed that Doyle and Cook never spent a single night at the Marriott.

Moreover, the Election Code specifically indicates that a person cannot become a "resident" for purposes of an election by spending an evening at a location on a temporary basis without having the intent to make that place the person's home. *See* Tex. Elec. Code Ann. § 1.015(d).

Doyle testified in her own defense during the trial. According to Doyle, for over forty years she lived on Bending Oaks and had registered to vote at that address because "that's where we live." Doyle admitted during the trial that she has never moved from her address on Bending Oaks. In April 2010, Doyle signed a voter registration form that lists 9333 Six Pines Drive as her residence; on the same form, Doyle listed her address on Bending Oaks as the address where she received her mail. Doyle's voter registration application contains the following statement: "I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law." During the trial, Doyle indicated that she lived with her husband at their house located on Bending Oaks. During her testimony, Doyle acknowledged that she went to the Marriott on the day before the election, and the day of the election, but she never spent a night at the Marriott on Six Pines Drive.

James Stilwell, the attorney who represented the incumbent directors in the election contest case, also testified during Doyle's trial. He identified photographs

of Doyle's home on Bending Oaks, which were taken approximately two weeks after the May 2010 election. He explained that the photographs show a home that appeared to be lived-in. The jury also heard testimony that none of the group of ten individuals associated with Doyle who registered and voted in the District's election ever made homes within the election boundaries for the District, and the jury was entitled to consider the fact that Doyle was part of an organized effort by individuals that did not have homes within the District's boundaries to oust the District's incumbent directors in deciding whether Doyle acted intentionally. Given the evidence admitted during the trial allowing the jury to infer that Doyle never intended to make her home within the District, the jury's conclusions that Doyle's presence in the district was for a temporary purpose that was unaccompanied by any intent to make a home there is supported by substantial evidence that the trial court admitted before the jury during Doyle's trial. *See id*. § 1.015(a), (d).

The jury could use the same evidence to reject Doyle's claim that she made a legal mistake by deciding that she could cast a legal vote in the District's election. When viewed either in a neutral light or in the light that most favors the jury's verdict, the jury could conclude either that Doyle did not ever believe she could cast a legal vote in the District's election, or that if she subjectively thought

15

she could vote legally, her subjective belief was unreasonable. *See Butcher*, 454 S.W.3d at 20; *Hooper*, 214 S.W.3d at 13. According to Doyle, she reviewed an Attorney General opinion and a Secretary of State opinion at a meeting before the election that addressed the requirements to vote in a Texas election. However, the opinions on which Doyle testified she examined alert the reader to the Election Code's prohibition against acquiring "a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." Tex. Elec. Code Ann. § 1.015(d); *see* Tex. Sec'y State Op. No. GSC-1 (2004); *see also* Tex. Att'y Gen. Op. No. GA-0141 (2004). In discussing the requirement of residency, the Secretary's opinion that Doyle testified she reviewed notes:

> A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change.

Tex. Sec'y State Op. No. GSC-1  (quoting *Guerra v. Pena*, 406 S.W.2d 769, 776 (Tex. Civ. App.—San Antonio 1966, no writ)). The Attorney General's opinion that Doyle reviewed clearly explains that "[b]oth bodily presence and current intention on the part of the applicant or voter are necessary to establish residence." Tex. Att'y Gen. Op. No. GA-0141. Additionally, the Attorney General's opinion indicates that the State might investigate and prosecute a voter if credible evidence

were brought to the office's attention or if a complaint were to be filed alleging an Election Code violation. *Id.*

By reading the information on which Doyle claimed she relied to vote, the jury could have concluded that a reasonable person would have understood that a person cannot vote in an election by going within the district's election boundaries for a temporary purpose without ever having, when there, the intent to make a home within the District's boundaries. *See id.*; *see also* Tex. Sec'y State Op. No. GSC-1. We conclude that the evidence before the jury was legally and factually sufficient to allow it to reasonably reject Doyle's defense that she made a mistake of law. *See Acosta*, 429 S.W.3d at 625; *see also* Tex. Penal Code Ann. § 8.03(b). We further hold that the evidence was legally sufficient to allow the jury to infer, beyond a reasonable doubt, that Doyle voted illegally. *See Jackson*, 443 U.S. at 318-19; *see also* Tex. Elec. Code Ann. § 64.012(a)(1); *Hooper*, 214 S.W.3d at 13. We overrule issue two through four.

Ineffective Assistance

In issue five, Doyle contends that she received ineffective assistance from her counsel during her trial. In support of her argument, Doyle criticizes her trial attorney for not offering a letter from the voter registrar into evidence. Doyle contends the registrar's letter shows that she was one of the voters that the registrar

17

registered for the District's May 2010 election, and she suggests that the letter would have supported her claim that she thought she could vote legally in the District's election. Additionally, Doyle contends that trial counsel should have offered into evidence various voter registrations that she claims would have shown that some voters listed addresses where offices, not residences, are located. Doyle suggests that such evidence would have undercut the State's argument that a person must vote where they live, and supported her claim that the State was selectively enforcing the election laws. Doyle also suggests that her trial counsel was ineffective because he failed to file a detailed motion for new trial, but she does not identify the issues that she claims her counsel should have raised in such a motion.

The documents Doyle uses to support her argument on appeal were never marked as exhibits and given to the trial court during the trial, nor were they made part of the record as part of her motion seeking a new trial. *See* Tex. R. App. P. 34.1 (indicating "[t]he appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record[]"). While the documents on which Doyle relies to support her issue five arguments were included with her brief, the evidence used to support a post-trial motion must be admitted into evidence in a hearing conducted by the trial court before it may properly be considered by the

18

appeals court in a direct appeal. *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009) (holding that the appeals court erred in relying on matters that were never offered into evidence at a hearing on a motion for new trial). We decline Doyle's request asking that we consider documents that are not part of the clerk's or reporter's record in deciding her appeal. *See James v. State*, 997 S.W.2d 898, 901 n.5 (Tex. App.—Beaumont 1999, no pet.) ("An appellate court must determine a case on the record as filed and cannot consider documents attached as exhibits or appendices to briefs or motions.")

Ineffective assistance of counsel claims are generally unsuccessful in a direct appeal because the trial court record is rarely developed sufficiently to support such claims. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). In her motion for new trial, Doyle did not raise an ineffective assistance claim, and the trial court did not conduct a hearing to consider Doyle's claim that she received ineffective assistance. In summary, Doyle's appeal does not present "the rare case where the record on direct appeal is sufficient to prove that counsel's performance was deficient[.]" *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). Given the fact that the record does not show that Doyle's counsel had the opportunity to explain his strategy as related to the evidence Doyle now claims should have been introduced during her trial, we hold that Doyle failed

to overcome the strong presumption that she received reasonable professional assistance. *See Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). In the absence of a proper record that supports Doyle's ineffective assistance claim, the proper procedure is to overrule Doyle's ineffective assistance claim without prejudice to her right to raise a claim of ineffective assistance in a post-conviction writ. *See Robinson*, 16 S.W.3d at 813 n.7.

Having overruled all of Doyle's issues, the trial court's judgment is affirmed.[3]

---

[3] The trial court's written judgment states:

. . . The Defendant, in person and by and through her attorney, waived the right of trial by jury in writing; the Assistant District Attorney approved and consented in writing to the waiver of a jury; and, the Court approved and consented to same. The Defendant, having been duly arraigned, entered her plea of Guilty. It appeared to the Court that the Defendant was mentally competent and that her plea was free and voluntary. The Court admonished the Defendant as to the consequences of such plea and the Defendant persisted in entering her plea of Guilty. Therefore, the Court accepted the Defendant's plea.

The Court, having heard the Indictment read and the Defendant's plea thereto, postponed a finding of guilt and ordered that a Pre-Sentence Investigation be conducted by the Community Supervision and Corrections Department.

And, the Court on this date, MAY 22, 2014, after reviewing the evidence submitted and determining that it was sufficient to show the guilt of the Defendant, and having considered the Pre-Sentence Investigation Report and arguments of counsel, is of the opinion and,

AFFIRMED.



HOLLIS HORTON
Justice

Submitted on October 29, 2015
Opinion Delivered March 9, 2016
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

therefore, finds the Defendant guilty of the offense as charged and that the offense was committed on May 08, 2010.

These recitals are largely incorrect, as the reporter's record demonstrates that Doyle rejected the State's plea bargain offer, entered a plea of Not Guilty, and did not waive her right to a jury trial on her guilt or innocence. Because the trial court can correct these clerical mistakes by entering a judgment nunc pro tunc, as it does not need plenary power to sign a judgment correct these clerical errors, we need not remand the case for the correction of these portions of the judgment. *See State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. 1980).

21